691 So.2d 1213 (1997)
Merril J. DAIGLE
v.
Michael J. AUTHEMENT, National Automotive Insurance Company and Louisiana Indemnity Insurance Company.
No. 96-C-1662.
Supreme Court of Louisiana.
April 8, 1997.
Herbert William Barnes, Jr., Kentley Robert Fairchild, Samaine, Barnes & Allen, Houma, for applicant.
James Luke, Mathieu & Dagate, Houma, for respondent.
Michael H. Hogg, Metairie, Peirce Aldridge Hammond, II, New Orleans, for amicus curiae Southern United Fire Insurance.
MARCUS, Justice.[*]
Merril Daigle was injured in an intersectional collision when her vehicle was struck by a vehicle being operated by Michael Authement. Daigle sued Authement and his liability insurance carrier, National Automotive Insurance Company. She also sued her own automobile liability insurer, Louisiana Indemnity Insurance Company, asserting uninsured/underinsured motorist coverage.
Louisiana Indemnity answered denying coverage. It claimed that Daigle had executed a valid written rejection of uninsured motorist coverage as permitted by La.R.S. 22:1406.[1] Plaintiff filed a motion for summary *1214 judgment seeking a ruling that the rejection form used by Louisiana Indemnity was invalid and that coverage was therefore available to her in an amount equal to the bodily injury coverage afforded by her liability policy. The trial judge granted Daigle's motion for summary judgment. After a trial on the merits, judgment was rendered in favor of Daigle and against Louisiana Indemnity in the amount of $10,000 (policy limits), together with legal interest and costs.[2]
The court of appeal reversed the judgment of the trial court, holding that the rejection form used by Louisiana Indemnity sufficiently informed the insured of her available options with respect to uninsured motorist coverage and allowed her to choose between them.[3] Upon the application of Merril Daigle, we granted certiorari to review the correctness of that decision.[4]
The sole issue presented for our review is whether the execution by Daigle of the form designed and used by Louisiana Indemnity constituted a valid rejection of the uninsured motorist coverage that would otherwise be provided to her by operation of law pursuant to La.R.S. 22:1406.
The disputed rejection form appeared at the bottom of Daigle's application for insurance and provided:
UNINSURED MOTORISTS PROTECTIONCOVERAGE SELECTION
Louisiana law requires that all automobile liability policies issued or delivered in this state shall afford Uninsured Motorist Coverage unless the insured shall reject such coverage.
I HAVE BEEN OFFERED and I hereby REJECT Uninsured Motorists Bodily Injury coverage.
SIGNATURE OF APPLICANT
___________[5]
Uninsured motorist coverage is provided for by statute and embodies a strong public policy. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987); A.I.U. Insurance Company v. Roberts, 404 So.2d 948 (La. 1981). The object of such coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991). La. R.S. 22:1406 D(1)(a)(i) mandates that every automobile liability insurance policy issued or delivered in this state shall include coverage, in not less than the limits of bodily injury liability provided by the policy, for the protection of insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles. Statutory coverage will be read into a policy as if it were in the policy itself. Henson, 585 So.2d at 537. However, the statute also provides that the insured may reject in writing the statutorily mandated coverage or select lower limits.
We have held that the UM statute is to be liberally construed and that a rejection of the coverage provided by law must be clear and unmistakable. Roger, 513 So.2d at 1131. The insurer bears the burden of proof that a rejection of coverage or a selection of lower limits has been legally perfected. Henson, 585 So.2d at 539. A valid rejection must be expressly set forth in writing and signed by the insured or his authorized representative. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992); Henson, 585 So.2d at 538.
In 1987, La.R.S. 22:1406 D was amended to require that any rejection or selection of lower limits shall be made only "on a form designed by each insurer." Implicit in the *1215 legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways. Moreover, as in any case where the same type of document is drafted separately by multiple authors, it is to be expected that some forms will be better than others. Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute. It did not do so. Thus, the question before us is not whether the form used by Louisiana Indemnity was the best form that anyone could possibly devise. Rather, the question before us is whether the form designed and used by Louisiana Indemnity was adequate for the purpose intended by the legislature. We believe that it was.
In Tugwell, we held that a rejection form used by an insurance company must inform the applicant of the available options regarding UM coverage so that the applicant can make a meaningful selection from among the options provided by the statute. A form does not meet the statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. We recognized in Tugwell that the statute normally provides three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower that those limits, or no UM coverage. However, when an applicant elects to purchase only the minimum bodily injury limits allowable, the option of selecting UM coverage at limits lower that those in the policy is foreclosed by law pursuant to La. R.S. 22:1406 D(1)(a)(i)[6] and La.R.S. 32:900(B)(2). Because Daigle purchased bodily injury coverage in the minimum available limits, she could not lawfully opt to have UM coverage at lower limits. Accordingly, the form used by Louisiana Indemnity did not have to inform her of an unavailable option.[7]
Daigle had only two options open to her under La.R.S. 22:1406, the statutorily mandated UM coverage or none at all. Louisiana Indemnity had to inform her of those two options and give her the opportunity to select between them. In our view, the form designed by Louisiana Indemnity did so in a manner sufficient to permit a valid rejection of UM coverage.
The Louisiana Indemnity form advised Daigle in plain and unambiguous language that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage "unless the insured shall reject such coverage." Thus, Daigle was advised that if she did nothing, she would have UM coverage. The form then provided a mechanism for the insured to exercise her other statutory option, rejection of coverage. By executing the form, she made a choice between having UM coverage and not having it. None of the options available were foreclosed by the Louisiana Indemnity form. In this case, Daigle placed her signature immediately below the line which read, "I HAVE BEEN OFFERED and I hereby REJECT Uninsured Motorist Bodily Injury coverage." Her signature constituted an affirmative act rejecting coverage which was clear and unmistakable.
The insured does not claim that she did not understand the form when she signed it or that she was misled in any way. She only claims that the form is defective on its face. She argues that the title makes the form ambiguous because it is labeled "Uninsured Motorist Coverage-Coverage Selection," when it is actually only used for rejection of coverage. We do not agree. If the insurance applicant fails to sign the form, the *1216 applicant is selecting the option of retaining the benefits of UM coverage mandated by law. The form provides a means of selecting between options, because by not signing the form, the applicant is choosing to keep that which the law stipulates for his or her benefit. Thus, the title of the form does not render it unacceptable.
The insured further argues that the form should have provided a means of affirmatively choosing UM coverage by providing boxes or blanks for her to check indicating her selection among the statutory options. While such a format may be desirable, it is only one way of making sure that the applicant is informed of the available options and allowed to choose between them.[8] In Tugwell, we noted that the task of informing the applicant of available options can be accomplished in several ways. It is not the job of the courts to draft insurance forms or to dictate the exact format or wording which must be used for a valid rejection of the mandated UM coverage. The legislature specifically left that task to the insurers. Moreover in Henson, we held that the statute does not require an affirmative act to choose coverage. Any affirmative signature or mark accepting coverage would be mere surplusage, since the coverage is automatically extended by operation of law. An applicant does not have to sign a separate document opting for coverage already provided in the policy. Such a document could be thrown away after the insured's execution of it without any effect whatsoever. The statute requires an affirmative act only if UM coverage is rejected altogether or, in an appropriate case, where lower UM limits are statutorily permitted and desired. Accordingly, we cannot conclude that Louisiana Indemnity's failure to set up its form so as to require a penstroke in favor of coverage renders the form defective.
We also reject Daigle's contention that the uninsured motorist coverage selection form used by Louisiana Indemnity in conjunction with applications for insurance had to provide a written definition of uninsured motorist coverage in order to permit a valid rejection of UM coverage. The statute does not impose such a requirement in order to satisfy the insurer's responsibility to inform the applicant of available options and allow a choice between them. Moreover, we do not consider it necessary or appropriate for this court to impose such a requirement.
In our view, the execution of the form designed by Louisiana Indemnity constituted a valid and enforceable rejection of UM coverage under Louisiana law. Accordingly, we will affirm the decision of the court of appeal.

DECREE
For the reasons assigned, the decision of the court of appeal is affirmed. All cost are assessed against Merril Daigle.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] References in this opinion to "uninsured motorist coverage" or "UM coverage" should be deemed to read: "uninsured or underinsured motorist coverage."
[2] Plaintiff settled her claims against the driver of the other vehicle and his insurer for $10,000 (policy limits) and executed a release in favor of those parties. At trial the parties stipulated that Daigle was not at fault and that the total amount of her damages was $20,000. The only issue before the court was whether UM coverage was available to her under her own policy.
[3] 95-1465 (La.App. 1st Cir. 5/31/96); 676 So.2d 650.
[4] 96-1662 (La.11/15/96); 682 So.2d 746.
[5] There is no dispute that the insured properly executed the document at the time and on the date the original application for insurance was completed.
[6] This provision was enacted by Act 980 of the Regular Session of the legislature and became effective on August 21, 1992. The policy in dispute in this case was issued in October, 1992 and is therefore governed by the new version of the statute.
[7] See Morgan v. Sanchez, 94-0090 (La.App. 1st Cir. 4/15/94); 635 So.2d 786.
[8] In Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), we gave two examples of formats that could be used to provide an applicant with a meaningful selection from among the statutory options in a case where a selection of lower limits was possible. We neither held nor implied that those were the only acceptable methods of informing the applicant of the available options. We found the form used in Tugwell defective because it did not inform the applicant of an option available in that case (lower limits) and foreclosed the selection of that option.