liCALOGERO, Chief Justice,
dissenting from denial.
Justice would grant to reconsider the issue resolved in Daigle v. Authement, 96-C-1662 (La. 4/8/97), 691 So.2d 1213.
In Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), this Court held that an uninsured/underinsured motorist coverage (UM coverage) rejection form used by State *1060 Farm did not place the applicant in a position to make an “informed rejection” of UM coverage; the form did not set forth all of the options available to the insured, and the applicant therefore was unable to make a “meaningful selection” from among the options provided by La. R.S. 22:1406 D. Citing Henson v. Safeco Ins. Cos., 685 So.2d 534, 538. (La.1991). The policy at issue in Tugwell was an umbrella policy with a personal liability ceiling of $1 million. Because the policy’s limits were higher than the statutory minimum, the insured had three statutory options regarding UM coverage: (1) acceptance of coverage at the same limits as the policy’s coverage ($1 million); (2) selection of coverage limits lower than the policy limits; or (3) rejection of coverage. Despite the legal availability of these three options to the insured, the rejection form signed by the insured only provided a space for the insured to reject coverage completely. It did not provide a space in which the insured could choose limits lower than the $1 million reach of the policy’s umbrella. The rejection purportedly accomplished by the insured’s signature on that form was therefore invalid, because the form did not afford the applicant an opportunity to “meaningful[ly] select[]” from among his three statutory options with regard to UM coverage. 609 So.2d at 197.
Recently, this Court again addressed the validity of a UM rejection form, in Daigle v. Authement, 96-C-1662 (La. 4/8/97), 691 So.2d 1213. The Daigle insured, like the insured in the instant application, purchased only the minimum bodily injury limits allowable under La.R.S. 32:900. La.R.S. 22:1406 D(l)(a)(i) provides: “In no event shall the policy limits of an uninsured motorist |2policy be less than the minimum liability limits required under R.S. 32:900.” Thus, one of the three options available to the Tugwell insured — selection of lower coverage limits than the limits of the given policy — was not available to the Daigle insured. The Daigle rejection form, like the instant rejection form, provided only a space for the insured to reject UM coverage, after stating that Louisiana law requires that UM coverage be offered. This Court upheld the insured’s rejection of UM coverage in Daigle, holding that the form designed by Louisiana Indemnity “was adequate for the purpose intended by the legislature,” and thus “sufficient to permit a valid rejection of UM coverage.” Op. at 1215. According to the Court, the form satisfied Tugwell because it “inform[ed] the applicant of the available options regarding UM coverage so that the applicant c[ould] make a meaningful selection from among the options provided by the statute.” Op. at 1215. In other words, the Court held that the form afforded the insured the chance to make an “informed rejection” of coverage, under Tugwell and Henson, or to accept coverage at limits equal to the bodily injury limits in the policy.
We were mistaken. Neither the Daigle form nor the form under consideration today inform the applicant that Louisiana law requires UM coverage to be offered in an amount “not less than the limits of bodily injury liability provided by the policy.” Rather, they simply state that UM coverage must be offered, then present a dotted line on which the respective lay applicants must pen what may be an ill-informed rejection, perhaps made without knowing of the nature of UM coverage opportunities, in particular of the legally mandated $10,000/$20,000 minimum limits. For all the signatory knows from the instant form and the Daigle form, the coverage being offered may have been at limits of $500 per person, $1,000 per accident, or some other pair of limits less than $10,000/ $20,000.
Although the Daigle insured and the insured in the instant application had but two out of a possible three UM options available to them, Tugwell and its predecessors dictate that a rejection form must adequately inform the applicant of all available options, including “UM coverage equal to bodily injury limits in the policy.” Tugwell, 609 So.2d at 197. The Daigle opinion wrongly focuses on one aspect of Tugwell: whether the particular form “foreclose^” any of the “options available” to applicant by the way it is laid out. Op. at 1215. Because the Daigle form technically allowed the applicant to take advantage of either one of her two options (acceptance of UM, which in that case was equal to the. $10,000/$20,000 bodily injury limits of the policy, by not signing, or rejec *1061 tion of UM by signing), this Court held the form proper. Unfortunately, however, _[3Daigle neglects the other side of the Tug-well coin, which holds that the mere availability of an option to an applicant is not enough — the applicant must be sufficiently informed of the nature of that option before the applicant may execute an informed rejection thereof. The average layperson is likely not familiar with the nature of UM coverage, and that lack of familiarity could easily manifest itself in an applicant’s belief that UM coverage is of such miniscule limits as to be unnecessary.
Without being informed that UM coverage must either be rejected or provided in amounts equal to the policy’s bodily injury limits, applicants are unable to make the “informed rejection” required by Tugwell. For just as surely as “an insured cannot exercise an option he does not know exists,” Tugwell, 609 So.2d at 199, is an insured prevented from exercising an option of whose existence he is aware but whose content remains a mystery. As such, I would grant this writ application for the purpose of reassessing our holding in Daigle with respect to UM rejection forms.