697 So.2d 672 (1997)
James T. NESBITT, III, Plaintiff-Respondent,
v.
PROGRESSIVE INSURANCE COMPANY, Defendant-Applicant.
No. 29660-CW.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*673 Cook, Yancey, King & Galloway By Kenneth Mascagni, Timothy B. Burnham, Shreveport, for Applicant.
Weems, Wright, Schimpf, Hayter & Carmouche by Carey T. Schimpf, Kenneth P. Haines, Shreveport, for Respondent.
Before BROWN, WILLIAMS and GASKINS, JJ.
GASKINS, Judge.
This case involves the validity of a rejection of uninsured/underinsured motorists (UM) coverage by plaintiff James T. Nesbitt, III. The lower court denied the motion for summary judgment filed by Nesbitt's auto insurer, Progressive Insurance Company. This court subsequently granted Progressive's writ application. For the reasons set forth below, we reverse the trial court judgment and grant summary judgment in favor of Progressive.

FACTS
Nesbitt brought suit against Progressive asserting that he was seriously injured in a vehicular accident on August 27, 1995 and claiming entitlement to UM insurance benefits. The record indicates that on December 9, 1994, Nesbitt applied to Progressive for insurance on his motorcycle. He requested the minimum limits of bodily injury liability coverage required by the State of Louisiana. He also signed the following section of the insurance application:
AGREEMENT WAIVING/REDUCING UNINSURED MOTORISTS COVERAGE
Act 154 of the 1974 Louisiana Legislature requires that as of July 31, 1974, all liability policies issued or delivered in this state shall afford Uninsured Motorists Coverage in amounts not less than the limits of Bodily Injury Liability provided by the policy unless the insured shall reject such coverage or select a lower limit.
[ ] I hereby reject Uninsured Motorists Protection.
[ ] I hereby select Limits of Liability on Uninsured Motorists Coverage which are lower than the Bodily Injury Liability Limits on my policy.
*NOTE: Your selection will be carried forward to ALL future policies until you advise otherwise, in writing.
Accepted:
Signature of Named Insured
X s/James T. Nesbitt
1:30 p.m. Date 12/9/94
The copy of this form attached to Progressive's motion for summary judgment shows that the first block rejecting UM coverage was checked off. In his answer to request *674 for admissions, Nesbitt admitted signing the insurance application and the rejection form; however, he asserted that he signed without understanding the options he had and the applicable law. He contends that the form is defective as a matter of law under Tugwell v. State Farm Insurance Company, 609 So.2d 195 (La.1992), and that the insurer failed to obtain a proper waiver.
Progressive filed a motion for summary judgment in which it asserted that Nesbitt made a valid and binding rejection of UM coverage. The documents attached to its motion demonstrate that Nesbitt paid no premium for UM coverage. In his opposition to the motion, Nesbitt asserted that there were no facts indicating that he personally checked the box rejecting UM coverage, that his options were explained to him, or that he was given a meaningful opportunity to accept UM coverage if he desired.
On November 14, 1996, the motion was argued in Shreveport City Court and denied. Thereafter, Progressive made writ application to this court, which writ was granted.

LAW

Summary judgment
Summary judgments are reviewed on appeal de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
According to the 1996 amendment to La. C.C.P. art. 966, effective on May 1, 1996, the summary judgment procedure is now favored and "shall be construed to accomplish these ends." The amended article has been construed as procedural in nature and, therefore, retroactive. See Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249; NAB Natural Resources v. Willamette Industries, Inc., 28555 (La.App.2d Cir. 8/21/96), 679 So.2d 477; Collinsworth v. Foster, 28671 (La.App.2d Cir. 9/25/96), 680 So.2d 1275; Curtis v. Curtis, 28698 (La. App.2d Cir. 9/25/96), 680 So.2d 1327.
However, the amendment did not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(C).

UM Coverage
UM coverage is provided for by statute, La. R.S. 22:1406, and embodies a strong public policy. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213. The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tort-feasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991); Daigle, supra.
La. R.S. 22:1406 dictates that every automobile policy issued or delivered in this state shall include coverage, in not less than the limits of bodily injury liability provided by the policy, for the protection of insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles. Statutory coverage will be read into a policy as if it were in the policy itself. Henson, supra; Daigle, supra. However, the statute also provides the insured may reject in writing the statutorily mandated coverage or select lower limits. Daigle, supra. Thus, there are generally three possible UM options: acceptance at bodily injury liability limits, selection of UM coverage at lower limits, or rejection.
Any exception to UM coverage must be expressed clearly, unambiguously and unmistakably, and a waiver of UM coverage must be in writing and signed by the named insured or his authorized representative. Henson, supra. It is the rejection of UM coverage, not the acceptance, that must be the affirmative act of the insured. Henson, supra; Gordon v. Southern United Fire Insurance Company, 95-2388 (La.App. 4th Cir. 8/21/96), 679 So.2d 582; Pine v. Doolittle, 28141 (La.App.2d Cir. 6/26/96), 677 So.2d 686, writ denied, 96-2269 (La.5/30/97), 694 So.2d 240; Lafitte v. Compton, 29296 (La.App.2d Cir. 2/26/97), 690 So.2d 872; Daigle, supra.
*675 Since the UM statute does not require an affirmative act to choose coverage, the UM coverage form does not have to provide boxes or blanks for the insured to affirmatively choose UM coverage. See Daigle, supra; Lafitte, supra; Davies v. La-Borde, 96-391 (La.App. 5th Cir. 10/29/96), 683 So.2d 876; Longo v. Bercegeay, 96-1129 (La.App. 3d Cir. 3/5/97), 692 So.2d 531; Martin v. CNA Insurance Company, 96-1342 (La.App. 3d Cir. 4/2/97), 692 So.2d 677. As the Fourth Circuit concisely and wittily stated in Gordon, supra, La. R.S. 22:1406(D)(1)(a) is a " `R.S.V.P. regrets only' statute."
Furthermore, when the insured elects to purchase the minimum bodily injury liability limits permitted under the law, the option of selecting UM coverage at lower limits than in the policy is legally unavailable. In that instance, there is no need to make a meaningless offer of nonexistent lower limits. Davies, supra; Daigle, supra.

DISCUSSION
The defendant contends that summary judgment in its favor should have been granted. After a careful review of the record and the law, we agree.
The plaintiff signed a valid waiver rejecting UM coverage. The waiver form itself contains no deficiencies. It is located on the lower half of the second page of the insurance application in a separate section which is conspicuously captioned. In its first paragraph, the waiver acquaints the insurance applicant with the fact that UM coverage must be provided in amount equal to the bodily injury liability limits unless the applicant selects lower limits or rejects UM coverage altogether. The language is clear and unambiguous. The form then provides boxes wherein the applicant may exercise his options.[1] This is followed by a separate signature line.[2]
The plaintiff argues that the form is defective because it failed to provide him with a "meaningful opportunity" to select UM coverage equal to the bodily injury coverage. He asserts that the form should have included a box or blank for him to mark signifying his acceptance of the UM coverage to which he was automatically entitled in the absence of a rejection or a selection of lower limits. However, as mentioned above, the most recent jurisprudence, including the Supreme Court's decision in the Daigle case, has made it abundantly clear that such acceptance does not require affirmative action.
The plaintiff also argues that he did not execute a knowing and intelligent waiver of coverage because the insurance agent filled out the form and presented it to him for his signature. He admits signing the UM waiver section, but asserts that he did not understand the options he had and the applicable law. He does not, however, make allegations of fraud, error or duress. In brief, the defendant stipulates for the purpose of the motion for summary judgment that its insurance agent marked the form.
In two other cases, we rejected the same arguments now presented by the plaintiff and affirmed summary judgment in favor of insurers. In Thomas v. Goodson, 26356 (La. App.2d Cir. 12/7/94), 647 So.2d 1192, the insured claimed that she did not know she was rejecting UM coverage because she was given a completed form to sign. However, like the plaintiff in the instant case, she admitted her signature. In Nelson v. Ragan, 26724 (La.App.2d Cir. 4/5/95), 653 So.2d 185, writ denied, 95-1161 (La.6/16/95), 655 So.2d 332, a UM rejection form was upheld even though there was no explanation of UM coverage options by the insurance agent and the waiver form was filled out before it was presented to the insured to be signed. The insured did not contest his signature. In the Thomas case, we stated that "[a] person who signs a written document is presumed to have knowledge and understanding of that *676 which he signs." In both cases, we noted that under the Henson case, the insurance applicant could either mark the boxes himself or sign or initial the insurer's mark. In Henson, supra, the applicant merely signed at the bottom a completed general insurance application, which contained a single inconspicuous sentence concerning UM coverage. In the instant case, we have a form with a conspicuous section on UM coverage which required a separate signature.
We are persuaded by our de novo review of the record that there are no disputed issues of material fact and that the defendant is entitled to summary judgment as a matter of law.

CONCLUSION
Accordingly, the writ heretofore granted is made peremptory. We reverse the judgment of the trial court and grant summary judgment in favor of the defendant/applicant, Progressive Insurance Company, and against the plaintiff/respondent, James T. Nesbitt, III. Costs are assessed against the plaintiff/ respondent.
WRIT MADE PEREMPTORY; JUDGMENT REVERSED. MOTION FOR SUMMARY JUDGMENT GRANTED.
NOTES
[1] Although the form provided a box for selecting lower limits, this option was not legally available to the plaintiff because he applied for liability coverage in the minimum amount.
[2] The plaintiff asserts that the form is ambiguous because the word "[a]ccepted" is placed before the signature line. However, it is obvious that this denotes the applicant's acceptance of the terms designated immediately above his signature.