697 So.2d 44 (1997)
Patsy P. SOILEAU
v.
PATTERSON INSURANCE GROUP, INC.
No. 96 CA 0017.
Court of Appeal of Louisiana. First Circuit.
June 20, 1997.
Stephen Callahan, Houma, for Appellee-Plaintiff.
James Dagate, Houma, for Appellant-Defendant.
David White, Bossier City, for Defendant.
Before LOTTINGER, C.J., and LeBLANC, FOIL, GONZALES and FOGG, JJ.
FOIL, Judge.
In this appeal, the defendant insurer challenges the trial court's ruling in favor of the plaintiff insured, holding her rejection of uninsured motorist (UM) coverage invalid. We reverse.

*45 FACTS
On June 1, 1994, plaintiff, Patsy P. Soileau, was driving a vehicle owned by John A. Trahan when she was injured in an automobile accident. The sole cause of the accident was the negligence of the other driver, Sadie M. Authement, in failing to yield the right of way to plaintiff's vehicle. Plaintiff compromised her claims against Authement and her insurer, and Trahan's UM carrier for the full limits of all available insurance.
At the time of the accident, plaintiff was covered under an insurance policy issued by defendant, Patterson Insurance Company, which provided bodily injury liability coverage of $10,000 per person/$20,000 per accident and property damage liability coverage of $10,000 per accident (commonly known as a 10/20 policy). She filed suit against Patterson, claiming the policy also provides UM coverage. Defendant denied coverage, noting that the policy contains a rejection of UM coverage. The sole issue before the trial court was the validity of the UM coverage rejection executed by plaintiff in her automobile insurance application. The court held the rejection invalid and defendant filed the instant appeal.

LAW
In a recent case, the Louisiana Supreme Court was called upon to determine the validity of a UM rejection form similar (though not identical) to the Patterson form in this case. Daigle v. Authement, 96-1662 (La. 4/8/97); 691 So.2d 1213. Therein, the court set forth the law applicable to UM rejections as follows Uninsured motorist coverage is provided for by statute, which mandates that every automobile insurance policy issued or delivered in this state shall include coverage in not less than the limits of bodily injury liability provided by the policy unless the named insured rejects the coverage or selects lower limits. La.R.S. 22:1406 D(1)(a)(i). A rejection of the coverage provided by law must be clear and unmistakable. Id. Further, a valid rejection must be expressly set forth in writing and signed by the insured or his authorized representative. Id.
In 1987, the legislature amended La.R.S. 22:1406 D to mandate that any rejection or selection of lower limits be made only "on a form designed by each insurer." In determining the validity of the form in Daigle, the court stated:
Implicit in the legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways. Moreover, as in any case where the same type of document is drafted separately by multiple authors, it is to be expected that some forms will be better than others. Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute. It did not do so. Thus, the question before us is not whether the form used by Louisiana Indemnity was the best form that anyone could possible devise. Rather, the question before us is whether the form designed and used by Louisiana Indemnity was adequate for the purpose intended by the legislature.
Daigle v. Authement, 96-1662 (La. 4/8/97); 691 So.2d 1213, 1214-15. The court further noted that it is not the job of the courts to draft insurance forms or to dictate the exact format or wording which must be used for a valid rejection of the mandated UM coverage. Id.
The rejection form used by the insurance company must inform the applicant of the available options regarding UM coverage so that the applicant can make a "meaningful selection" from among the options provided by the statute. Id. A form does not meet the statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. Id. The statute normally provides the insured with three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits, or no UM coverage. However, there are instances in which only two options are available to an insured. When an applicant *46 elects to purchase only the minimum bodily injury allowable, the option of selecting UM coverage lower than those limits is foreclosed by law under La.R.S. 22:1406 D(1)(a)(i) and La.R.S.32:900(B)(2). Id. In this case, because plaintiff purchased bodily injury coverage in the minimum available limits, she could not lawfully opt to have UM coverage at lower limits. Accordingly, the form used by the defendant insurer did not have to inform her of an unavailable option. Id.; Morgan v. Sanchez, 94-0090 (La.App. 1 Cir. 4/15/94); 635 So.2d 786, 787.
The UM rejection form signed by the plaintiff in this case reads as follows:
UNINSURED MOTORIST REJECTION
The undersigned applicant rejects and authorizes the company to remove all Uninsured Motorist coverage from the policy and its subsequent renewals.
NAMED INSURED'S SIGNATURE:
Here, as in Daigle, the plaintiff had only two options available to her under La.R.S. 22:1406 D, the statutorily mandated UM coverage or none at all. In view of the court's holding in Daigle, we find that the form designed by Patterson gave the plaintiff the opportunity to select between her only two available options in a manner sufficient to permit a valid rejection of UM coverage. The form provided a mechanism for her to exercise her statutory option of rejecting coverage. By executing the form, she made a choice between having UM coverage and not having it. In other words, her signature constituted an affirmative act rejecting coverage which was clear and unmistakable. By not signing the form, she could have selected the option of retaining the benefits of UM coverage. None of the options available to the plaintiff were foreclosed by the Patterson form. See Daigle v. Authement, 96-1662 (La. 4/8/97); 691 So.2d 1213.
For the foregoing reasons, the judgment of the trial court is reversed. Costs are assessed to plaintiff, Patsy P. Soileau.
REVERSED.
LOTTINGER, C.J., dissents and assigns written reasons.
LOTTINGER, Chief Judge, dissenting.
I respectfully dissent from the opinion of the majority that the UM rejection form utilized by Patterson Insurance Company in the case sub judice conforms with the latest test as enunciated by the Louisiana Supreme Court in Daigle v. Authement, 96-1662 (La. 4/8/97); 691 So.2d 1213.
As in Daigle v. Authement, the liability insurance coverage in the case sub judice is the minimum required by law, $10,000 per person/$20,000 per accident. However, that is where the similarity ends. In the case sub judice, the UM rejection form provides:

UNINSURED MOTORIST REJECTION
The undersigned applicant rejects and authorizes the company to remove all Uninsured Motorist coverage from the policy and its subsequent renewals.
In Daigle v. Authement, the UM rejection form provided:

UNINSURED MOTORISTS PROTECTION-COVERAGE SELECTION
Louisiana law requires that all automobile liability policies issued or delivered in this state shall afford Uninsured Motorist Coverage unless the insured shall reject such coverage.
I HAVE BEEN OFFERED and I hereby REJECT Uninsured Motorists Bodily Injury Coverage.
It is apparent that the two forms are distinctively different. In the case sub judice, the insured is never informed that UM coverage is required, in fact the form does not even state that UM coverage was offered and then rejected.
In Daigle v. Authement, at 1215, the supreme court explained:
Daigle had only two options open to her under La.R.S. 22:1406, the statutorily mandated UM coverage or none at all. Louisiana Indemnity had to inform her of those two options and give her the opportunity to select between them. In our view, the form designed by Louisiana Indemnity *47 did so in a manner sufficient to permit a valid rejection of UM coverage.
The Louisiana Indemnity form advised Daigle in plain and unambiguous language that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage "unless the insured shall reject such coverage." Thus, Daigle was advised that if she did nothing, she would have UM coverage. The form then provided a mechanism for the insured to exercise her other statutory option, rejection of coverage. By executing the form, she made a choice between having UM coverage and not having it. None of the options available were foreclosed by the Louisiana Indemnity form. (Emphasis added).
At the least, Daigle v. Authement stands for the proposition that there must be at least two options presented any policy holder where it comes to UM coverage: the option to exercise the statutorily mandated coverage or the option to reject the statutorily mandated coverage. However, one cannot know of the statutorily mandated coverage until one is informed of it. The UM rejection form in the case sub judice does not inform the insured of the statutorily mandated coverage, thus the form is defective.
For too long, time and effort and expense have been spent on the courts determining the validity of UM rejection forms. Perhaps it is now time for the legislature to legislatively dictate a UM rejection form that would be mandated to be used by the insurance industry.
I would affirm the trial court. Therefore, I respectfully dissent.