718 So.2d 619 (1998)
Claire L. HARRIS, Plaintiff-Appellant,
v.
SAFEWAY INSURANCE COMPANY, Defendant-Appellee.
No. 31050-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1998.
*620 Ike F. Hawkins, Jr., Shreveport, for Plaintiff-Appellant.
Gina L. Spann, Ruston, for Defendant-Appellee.
Before HIGHTOWER, CARAWAY & PEATROSS, JJ.
PEATROSS, Judge.
Claire L. Harris ("Harris") appeals a trial court judgment finding her rejection of uninsured motorist coverage to be valid. At issue is whether the insurance application adequately explained Harris' right to such coverage under LSA-R.S. 22:1406(D). For the reasons discussed herein, we affirm the trial court's judgment.

FACTS
On February 20, 1996, Claire Harris contacted insurance agent Bob Baucom ("Baucom") about obtaining "full coverage" on her recently purchased 1991 Ford Escort. Baucom provided two quotes over the telephone and Harris went to Baucom's office that afternoon to complete the application. Harris was subsequently involved in an accident on February 23, 1996, when her vehicle was hit by an uninsured motorist. On contacting Baucom about the accident, Harris was told that her policy of insurance did not include UM coverage.[1]
Harris thereafter filed a petition for declaratory judgment on the issue of whether the insurance application provided adequate information for her to make an informed rejection of UM coverage. At trial, Harris testified that Baucom never discussed or mentioned UM coverage when filling out the application. Harris explained that Baucom filled out the application while he asked her questions and that she signed the application on signature lines in two separate sections. Harris could not recall whether an "X" was placed next to the line rejecting UM coverage when she signed the application. Harris stated that she was not prevented from reading the application. She also admitted that she had never purchased UM coverage in the past and that, when Baucom offered her UM coverage after the accident, she told him that she could not afford it.
Harris' daughter Courtney Harris testified that she was with her mother when she went to purchase the insurance from Baucom. Courtney stated that Baucom did not mention anything about UM coverage and that no "X" was marked on the application rejecting UM coverage when Harris signed the application. Courtney further testified that Baucom filled out the application and then handed it to Harris to sign. Courtney testified that in choosing her insurance carrier, her mother sought the lowest premium, an insurance agency that was close to her home, and an agency that was open when she got off work.
Baucom testified that he used information learned during the telephone conversation with Harris to fill out the name, address, and make of car portions of the application prior to Harris' arrival at his office. He stated that he completed the application, including the portion rejecting UM coverage, in Harris' presence using information obtained from Harris. Baucom testified that he explained the coverages afforded by "full coverage" and that UM coverage would be an additional $10. According to Baucom, Harris stated that she could not afford the UM coverage. Baucom stated that Harris read the application and signed it and that an "X" indicating rejection of UM coverage was on the application when Harris signed it. Baucom also stated that when he discussed UM coverage with Harris after the accident, she again told him that she could not afford it.
The trial court found that the application included a section allowing an insured to either reject UM coverage or select UM coverage at limits equal to those for bodily injury liability or at lower limits. The trial court further found that the application contained an "X" indicating rejection of UM coverage, that Harris signed the rejection and application, and that Harris had prior experience in obtaining automobile insurance *621 and had rejected UM coverage in the past. Based on these findings, the trial court ruled that the rejection of UM coverage was valid as the application set forth the statutorily required options in clear and unambiguous language.
Harris now argues on appeal that the rejection is invalid because the application did not inform her of the availability of UM coverage and her right to receive such coverage. Harris asserts that an applicant for insurance has the right to know that one is entitled to receive UM coverage and that the UM coverage is available before a valid waiver, rejection, or exemption of such coverage can be made. She urges that the application at issue is deficient in its failure to inform that UM coverage is available and required to be provided by state law before requiring rejection or selection of such coverage.
The application at issue (hereinafter referred to as the "Safeway form") includes a section labeled "SELECTION OR REJECTION OF UNINSURED MOTORIST COVERAGE." The language under this heading is as follows:
Pursuant to Louisiana Revised Statute 22:1406(D) and condition 7 of the policy, the applicant does hereby acknowledge and agree to one of the following:
(A)[] Select Uninsured Motorist Coverage with limits equal to those provided under bodily injury liability.
(B)[] Select Uninsured Motorist Coverage with limits less than those provided under bodily injury liability $___________ /$_________
(C)[] Reject Uninsured Motorist Coverage completely.
I understand and agree that this (acceptance/rejection) of coverage shall be applicable to the policy of insurance on the vehicle described above. Said (acceptance/rejection) shall apply on all future renewals of this policy and all replacement policies, until I make a written request for additional coverage or more extensive coverage than is provided in the current policy.
 Signature of Applicant _____________
An "X" is marked on the box at line "C" indicating rejection of UM coverage. Harris' signature is in the blank at the end of the section. Harris also signed the "APPLICANT'S STATEMENT" section of the application, in which she attested she had read the application and had answered all questions truthfully.

DISCUSSION
The object of the UM legislation is the promotion of full recovery for innocent automobile accident victims by making UM coverage available for their benefit. The UM statute is to be liberally construed and statutory exceptions to coverage are to be interpreted strictly. Any coverage exclusions in an insurance policy must be clear and unmistakable. The insurer bears the burden of proving that any insured named in the policy rejected in writing UM coverage equal to bodily injury limits or selected lower limits. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992); Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991); Nelson v. Ragan, 26,724 (La.App. 2d Cir.4/5/95), 653 So.2d 185.
At the time Harris purchased the policy at issue, the applicable law as set forth in LSA-R.S. 22:1406(D) required insurers to provide UM coverage "in not less than the limits of bodily injury liability provided" by the policy. Such UM coverage was not applicable, however, "where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits." LSA-R.S. 22:1406(D)(1)(a)(i). The statute further provided that "rejection or selection of lower limits shall be made only on a form designed by each insurer" and that such form "shall be provided by the insurer and signed by the named insured or his legal representative." LSA-R.S. 22:1406(D)(1)(a)(ii).
In accordance with the UM statute, the Louisiana Supreme Court has held that a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. Henson v. Safeco Ins. Co., supra. The form presented by the insurer *622 must give the insured the opportunity to make a meaningful selection from the statutory options which include: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than the bodily injury limits in the policy; and (3) no UM coverage. Tugwell v. State Farm Ins. Co., supra. The form need not include, however, the option of selecting limits lower than the bodily injury limits in the policy when an insured purchases only the minimum bodily injury limits allowed by law. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213.
Harris argues on appeal that the trial court erred in finding the signed Safeway form sufficient to establish a valid rejection of UM coverage. The Safeway form sets forth the three options available to an insured under the statute, as required by Tugwell, supra. Harris argues, however, that the form is deficient and the rejection therefore invalid because the form does not clearly, unambiguously, and unmistakably set forth and explain that the law of Louisiana requires an insurer to provide UM coverage unless rejected by the insured. Harris' argument suggests that to be sufficient, a form must specifically include language tracking the statute. Harris contends that the references in the Safeway form to the statute and to condition 7 of the policy do not provide a sufficient explanation of the law because an applicant who was not an insurance agent or attorney would not know what these references mean. Harris further asserts that no applicant presented with the Safeway form could make a "meaningful selection" or "informed rejection."[2]
While Harris categorizes her argument as dealing with the insurer's duty to offer UM coverage rather than the insured's rejection of coverage, she essentially challenges the validity of the form presented for her signature. If the form is invalid or deficient, then her purported rejection of UM coverage would likewise be invalid.
As noted above, the Safeway form sets forth the three options available to an insured under the statute, as required by the Louisiana Supreme Court in Tugwell. As the Daigle court stated:
Implicit in the legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways. Moreover, as in any case where the same type of document is drafted separately by multiple authors, it is to be expected that some forms will be better than others. Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute.
Daigle v. Authement, 691 So.2d at 1214-1215.[3] The Daigle court further noted that the question is not whether the form is the best that could be devised, but whether the form was adequate for the purpose intended by the legislature. Id.
As stated above, the intent of LSA-R.S. 22:1406(D) is to provide UM coverage at bodily injury liability limits when the insured does not reject such coverage or select lower limits. While the Safeway form does not specifically track the statutory language by stating that the insurer is required to provide UM coverage if the insured does not reject such coverage, the form does clearly, unambiguously, and unmistakably set forth *623 the three available options. The UM coverage form is set forth in section 10 of the onepage application and is identified by an obvious heading. The Safeway form provides any insured reading the UM coverage section with an understanding of the choice being made. The insured is required to sign at both the UM coverage section and at the "APPLICANT'S STATEMENT" section of the application. We agree with the trial court, therefore, that the Safeway form was adequate for the purposes intended by the legislature and provided Harris with an opportunity to make a "meaningful selection" or "informed rejection."
Our resolution is consistent with the jurisprudence. In Nesbitt v. Progressive Ins. Co., 29,660 (La.App. 2d Cir.6/18/97), 697 So.2d 672, an insured who signed a valid form rejecting UM coverage argued that his rejection was not valid because the agent filled out the form and presented it to him for his signature. The insured also asserted that he did not understand the options or the applicable law. This court rejected the insured's arguments, finding that the form at issue included a conspicuous section on UM coverage which required a signature and noting that the insured did not raise allegations of fraud, error, or duress that would vitiate his rejection of coverage. Similar arguments were raised and rejected in Nelson v. Ragan, supra, and Thomas v. Goodson, 26,356 (La. App. 2d Cir.12/7/94), 647 So.2d 1192.
In the instant case, Harris admits that she signed the application including the UM coverage section. She affirms that she was not prevented from reading the application and raises no allegations of fraud, error, or duress. In the absence of allegations of fraud, duress or misconduct of the insurance agent, a person who signs a written document is presumed to know and understand what she is signing. Mixon v. Progressive Specialty Co., 26,698 (La.App. 2d Cir.6/18/97), 697 So.2d 662; Thomas v. Goodson, supra. These assignments of error are without merit.
Harris further asserts that her rejection of UM coverage should be considered invalid because the trial court erred in considering whether she had rejected UM coverage in the past. Harris asserts that such information is irrelevant. For the reasons discussed above, the trial court could reasonably have found Harris' rejection in the instant case to be valid, regardless of the relevancy of any previous rejections of UM coverage. We therefore pretermit discussion of this issue.

CONCLUSION
Since the Safeway form presented to Harris meets the statutory and jurisprudential requirements, we hold that Harris' rejection of UM coverage is valid. The judgment of the trial court is affirmed. Costs of appeal are assessed to Harris.
AFFIRMED.
NOTES
[1] References in this opinion to UM coverage include both uninsured and underinsured motorist coverage.
[2] While contradictory testimony was presented at trial concerning whether Harris and Baucom discussed UM coverage when Harris obtained the insurance, whether an "X" was marked on the form rejecting UM coverage when Harris signed the form, and whether Harris read the form before signing, these issues have not been raised on appeal as a basis for challenging the validity of Harris' rejection. In any event, the trial court's reasonable inferences of fact and reasonable evaluations of credibility would not be disturbed on appeal. Carter v. Baham, 94-2809 (La.1/27/95), 649 So.2d 967; Rosell v. ESCO, 549 So.2d 840 (La.1989).
[3] The Louisiana Legislature amended R.S. 22:1406(D) by Acts 1997, No. 1476, to require forms prescribed by the commissioner of insurance for the rejection of UM coverage or selection of lower limits.