739 So.2d 811 (1999)
Jewell TRAHAN
v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Prudential Insurance Company of America and Aetna Life & Casualty Insurance Company
No. 97 CA 2470.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
Rehearing Denied August 24, 1999.
*812 Carolyn A. McNabb, Richard P. Mire, Houma, Counsel for Plaintiff/Appellant, Jewell Trahan.
Patricia P. Reeves, Houma, Counsel for Defendant/Appellee, Louisiana Insurance Guaranty Association.
Before: LeBLANC, FOIL, FOGG, PARRO and KUHN, JJ.
LeBLANC, J.
This is an appeal by the plaintiff, Jewell Trahan, from the trial court's grant of Louisiana Insurance Guaranty Association's (LIGA) cross motion for summary judgment.

FACTS
Plaintiff, while in the course and scope of her employment with the Terrebonne Parish School Board (School Board), was injured in an automobile accident caused by an unknown tortfeasor. Trahan originally brought suit naming Prudential Property & Casualty Insurance Company (Prudential Property), Prudential Insurance Company of America (Prudential America) and Aetna Life & Casualty Insurance Company (Aetna) as defendants. She later amended her petition and named Prudential Property, United Community Insurance Company (United), and LIGA as defendants. (United provided liability insurance for the School Board.) The record establishes LIGA, Aetna and Prudential Property were dismissed by plaintiff.[1] United was eventually placed in liquidation and LIGA was again added. In addition, the School Board intervened to recover reimbursement of workers' compensation payments.
Plaintiff filed a motion for summary judgment. In her motion, she alleged LIGA had claimed a $25,000.00 limit on the underinsured/uninsured motorist (UM) coverage pursuant to a rejection/selection form supplied by United and executed by Jack Moore, Risk Manager for the School Board. Plaintiff asserted the rejection/selection form was invalid on its face and the UM limit was equal to the liability limit of $1,000,000.00.[2] The School Board filed a *813 cross motion for summary judgment, asserting the validity of the UM rejection/selection form and urging a limit of $25,000.00 of UM coverage. Arguments on these motions were heard, and by judgment rendered on June 25, 1997, the trial court held the rejection/selection form was valid. On July 1, 1997, plaintiff noticed the trial court of her intention to seek supervisory writs with this court.[3] On July 15, 1997, plaintiff perfected this appeal.

LAW AND DISCUSSION

A. Summary Judgment
The judgment appealed is a partial summary judgment deciding the issue of insurance coverage. At the time this judgment was rendered, June 25, 1997, Louisiana Code of Civil Procedure article 966 F permitted summary judgment on the issue of insurance coverage. Louisiana Code of Civil Procedure article 1915 provided that a summary judgment rendered pursuant to article 966 D was not a partial final judgment for purposes of appeal.[4] When read together, these versions of articles 966 and 1915 did not allow the appeal of a summary judgment rendered on the issue of insurance coverage. See City of Plaquemine v. North American Constructors, Inc., 96-1825, 96-1857 (La.11/8/96); 682 So.2d 1253. Accordingly, we find this judgment is not appealable.[5] However, under the facts of this case and because the record, including plaintiff's July 1, 1997 notice of intent to seek writs, is already before us, we reason that judicial efficiency and the interests of justice may best be served by asserting our plenary power to exercise supervisory jurisdiction at this time. See Succession of Brantley, 96-1307, p. 6 (La.App. 1 Cir. 6/20/97); 697 So.2d 16, 19; Bourgeois v. Bourgeois, 555 So.2d 653, 654 (La.App. 4 Cir.1989). Therefore, we treat this appeal as an application for supervisory writs, which we grant.
Summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94); 639 So.2d 730, 750. In Louisiana, the law regarding summary judgment is set forth in Louisiana Code of Civil Procedure article 966, as amended by Acts 1997, No. 483. A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored. La. C.C.P. art. 966 A. Retroactive application of the new summary judgment law is permissible because these legislative changes were procedural in nature. La. C.C. art. 6; Peak v. Tuscaloosa Commerce Bank, 96-1258, p. 5-6 (La.App. 1 Cir. 12/29/97); 707 So.2d 59, 61-62.

B. Uninsured Motorist Coverage
La. R.S. 22:1406(D) governs the issuance of uninsured motorist coverage in Louisiana. The object of such coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Daigle v. Authement, 96-1662, p. 2 (La.4/8/97); 691 So.2d 1213, 1214. Section 1406(D) requires *814 that every automobile liability insurance policy delivered or issued for delivery in Louisiana provide UM coverage in not less than the limits of bodily injury liability provided by the policy. The insured has the option of either rejecting the coverage entirely or selecting lower limits. However, in no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under La. R.S. 32:900, which sets forth the motor vehicle liability law. In accordance with La. R.S. 22:1406(D), the insured is given three options when selecting UM coverage: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.
The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to bodily injury limits or selected lower limits. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). Moreover, the expression of a desire not to have UM coverage, however clear, does not constitute a valid rejection if the written expression of rejection does not meet the formal requirements of law. Wilkinson v. Louisiana Indemnity/Patterson Insurance, 96-0447, p. 10 (La.App. 1 Cir. 11/8/96); 682 So.2d 1296, 1301, writ denied, 96-2920 (La.6/13/97); 695 So.2d 964.
In the instant case, the rejection/selection form supplied by United provided:
REJECTION OF UNINSURED MOTORISTS COVERAGE OR SELECTION OF LIMIT OF LIABILITY
(Louisiana)
The Louisiana Insurance Code (Section R.S. 22:1406), amended, permits you, the insured named in the policy, to reject the Uninsured Motorists Coverage or to select a limit of liability lower than the limit for Bodily Injury Coverage in the policy but not less than the basic financial responsibility limit. Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from the owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.
* * * * * *
In accordance with the Louisiana Insurance Code (Section R.S. 22:1406), amended, the undersigned insured (and each of them) 
(Applicable item marked [X])
[] agrees that the Uninsured Motorists Coverage afforded in the policy is hereby deleted.
[X] agrees that the following limit of liability which is lower than the Bodily Injury Coverage limit, applies with respect to the Uninsured Motorist coverage afforded in the policy:
$ each person (enter limit if applicable);
$ 25,000 each accident.[[6]]
[] agrees that Uninsured Motorists Coverage provides property damage coverage to motor vehicles(s) without Collision Coverage.
The recent case Soileau v. Patterson Insurance Group, Inc., 96-0017 (La.App. 1 Cir. 6/20/97); 697 So.2d 44, reversed, 97-1910 (La.10/31/97); 703 So.2d 4, is instructive as to the application of the latest test of UM rejection/selection form validity as enunciated in Daigle. The Daigle court declared the necessity of the insurer to advise the insured "in plain and unambiguous language that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage `unless the insured shall reject such coverage.'" Daigle v. Authement, 96-1662 at 4; 691 So.2d at 1215. As restated by Judge Lottinger in his dissenting opinion in Soileau, "Daigle ... stands for the proposition that there must be at least ... the option to exercise the statutorily *815 mandated coverage.... [O]ne cannot know of the statutorily mandated coverage until one is informed of it." Soileau v. Patterson Insurance Group, Inc., 96-0017 at 2; 697 So.2d at 47 (Lottinger, C.J., dissenting).
The UM rejection/selection form supplied by United does not inform the insured of the statutorily mandated coverage, and we are constrained to find the form invalid. Therefore, regardless of the adequate evidence to support LIGA's position that the insured made an informed decision concerning selection of lower UM coverage limits, we are required to reverse the grant of summary judgment. See Wilkinson v. Louisiana Indemnity-Patterson Ins., 96-0447 at 10; 682 So.2d at 1301.

CONCLUSION
For the foregoing reasons, the district court's judgment granting LIGA's motion for summary judgment is hereby reversed, and plaintiffs motion for summary judgment is hereby granted. We remand the case for further proceedings.
APPEAL DISMISSED; WRIT GRANTED. JUDGMENT REVERSED; RENDERED; AND REMANDED.
PARRO, J., dissents with reasons.
FOIL, J., dissents for the reasons assigned by PARRO, J.
PARRO, J., dissenting.
I disagree with the result reached by the majority, and I feel compelled to do so because of the confusing jurisprudence on the subject of rejection/selection forms for uninsured motorist coverage.
At the outset, I note LSA-R.S. 22:1406(D)(1)(a)(i) mandates that every automobile insurance policy issued or delivered in this state shall include uninsured motorist coverage in not less than the limits of bodily injury liability provided in the policy. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213, 1214. In this connection, LSA-C.C. art. 5 provides, "No one may avail himself of ignorance of the law." Therefore, a named insured is conclusively presumed to know that any automobile insurance policy purchased in this state will provide uninsured motorist coverage in an amount not less than the limits for bodily injury liability.
But, LSA-R.S. 22:1406(D)(1)(a)(i) has a proviso which states, "however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits." In light of this language, the named insured seemingly has two options, that is, reject the coverage or select lower limits. Therefore, it would seem the jurisprudence which indicates that a named insured should be presented with three options is legally incorrect.
In the case at hand, the named insured (School Board) was presented with the two options seemingly required by the statute, and specifically chose the option selecting a limit "which is lower than the Bodily Injury Coverage limit." Therefore, the legal requirements were complied with, and the form should be deemed valid. For these reasons, I would affirm the judgment of the trial court. Accordingly, I respectfully dissent.
NOTES
[1] We are unable to determine from the record before us if Prudential America remains a defendant.
[2] The School Board maintained a bodily injury liability policy limit of $1,000,000.00 with a UM limit of $25,000.00.
[3] The record contains no subsequent action on plaintiff's notice to seek writs.
[4] We note the inconsistent identification of paragraphs D and F of article 966 by the 1996 and 1997 versions of article 1915.
[5] La. C.C.P. art. 1915 now provides a summary judgment rendered after July 1, 1997 on the issue of insurance coverage is a partial final judgment which may be reviewable by appeal, if agreed to by the parties or so designated by the trial court. Acts 1997 No. 483, effective July 1, 1997.
[6] On the printed form, the amount "$25,000" had been typed in.