LPEATROSS, Judge.
This appeal arises from a finding by the trial court that an uninsured/underinsured (“UM”) rejection form provided by Indemnity Insurance Company of North America (“IINA”) was invalid because it failed to provide the insured with the three options required by statute. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL HISTORY

On August 19, 1995, Dennis G. Thibo-deaux was fatally injured in a head-on collision with a vehicle being driven by Christopher Moore. Mr. Moore was covered for liability through Louisiana Farm Bureau Mutual Company (“LFBMC”) for minimal policy limits. Given the severity of the automobile accident, these limits were inadequate to compensate Mr. Thibo-deaux’s wife and children in their wrongful death/survival action claims.[1]
Nikita M. Leger, former wife of Mr. Thibodeaux and mother of Justin and Danielle Thibodeaux, filed suit as tutrix of her minor children against Mr. Moore and LFBMC.[2] During discovery, it was determined that Mr. Thibodeaux’s employer, Jacobs Engineering (“Jacobs”), carried insurance coverage with IINA and American International Specialties Lines Insurance Company (“AISLIC”), for which Mr. Thi-bodeaux was considered an insured pursuant to a specific endorsement.[3] Ms. Leger added Jacobs, LUNA and AISLIC to her suit and alleged that there was UM coverage available to Justin and Danielle.[4] Jennifer Thibodeaux, Mr. Thibodeaux’s widow, intervened in the suit and added her own UM claims for herself, their daughter and Mr. Thibodeaux’s estate. IINA asserts to the contrary that a proper UM rejection form was signed on behalf of Jacobs, negating any UM coverage on behalf of Mr. Thibodeaux.
The parties dispute which UM rejection form provided by IINA is applicable to the time period in which Mr. Thibodeaux was killed. Robert Erickson, Director of Jacobs’ Corporate Risk Management Division, testified during his deposition that he entered into a three-year insuring agreement with IINA on Jacobs’ behalf. In March 1994, Mr. Erickson procured a policy of liability coverage pursuant to that agreement for the period of March 1994-March 1995. Mr. Erickson executed the accompanying UM rejection form for the policy period.
Mr. Erickson then testified that, in 1995, Jacobs provided IINA with updated exposure information for the 1995-1996 policy period. Although IINA denies that a new policy was issued for that period, Mr. Erickson executed another UM rejection form which was to effect the 1995-1996 policy period.
IINA asserts that the 1995-1996 policy was merely a replacement policy and that *779 the 1994-1995 UM rejection form, therefore, is the valid form applicable at the time of Mr. Thibodeaux’s death. Plaintiffs, however, Largue that there are endorsements and addendums to the 1995-1996 policy which create new coverage exposures and, thus, a new policy requiring a new UM rejection form.
Specifically included in the 1995-1996 policy package, there is an addendum that lists 43 companies which are considered as insureds. This addendum is not present in the 1994-1995 policy package, which creates a presumption that further coverage has been purchased by the 1995-1996 policy.[5]
In explaining that there are no new insureds covered under the 1995-1996 policy, IINA stated in its reply brief that the companies listed are merely subsidiaries of Jacobs. In an attempt to further clarify the policies, IINA then filed a motion to supplement the record, stating that the entirety of the 1994-1995 policy was mistakenly not introduced into the trial court record and that the above mentioned addendum, as well as some others, should also have been included in that policy. This motion was denied pursuant to La. C.C. 2132.
Both of the UM rejection forms are very similar in composition and language. In the interest of judicial economy, therefore, and without reaching the issue of whether the 1995 1996 policy was a renewal or new policy, we shall analyze the validity of both UM forms. The pertinent language and composition of the form signed at the inception of the March 1994 policy period appeared as follows:
[[Image here]]
| Louisiana Law requires that every Automobile Insurance Policy afford Uninsured Motorist Coverage at limits equal to or in excess of the Bodily Injury Liability limits of the policy.[6] However, the named insured has the right to select lower limits or to reject the coverage. Please sign and indicate in the space provided below the limits of coverage desired. If you choose to reject the coverage, you must sign the appropriate statement on the lower portion of this form.
[[Image here]]
*780 [[Image here]]
The UM rejection form used for the 1995-1996 policy period is similar in composition, but the language of the introductory paragraph was changed somewhat to read as follows:
Louisiana Law requires that each Automobile Insurance Policy provide Uninsured Motorist Bodily Injury Coverage (UMBI) at limits equal to those purchased for Bodily Injury under the Liability Coverage of the policy. The Applicant/Named Insured may also select higher or lower UMBI limits, or may completely reject UMBI coverage.
[[Image here]]
Please sign and indicate in the spaces provided below your selection of options. If you choose to reject the UMBI coverage, you must sign the rejection option below.
□ UNINSURED MOTORIST COVERAGE-BODILY INJURY LIMITS (Check only one limit)
Directly below this statement were options with boxes similar to those in the 1994-1995 UM rejection form. In neither of those forms is there an]¿option for UMBI of $2,000,000, the liability bodily injury limits of the policy. The 1995-1996 form also provided for UM property damage coverage.

DISCUSSION

Summary Judgment

Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Banks v. State Farm Insurance Company, 30,868 (La.App.2d Cir.8/19/98), 717 So.2d 687.
The mover has the burden of establishing an absence of a genuine issue of material fact. A fact is material if its existence or non-existence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Banks, supra; Curtis v. Curtis, 28,698 (La.App.2d Cir.9/25/96), 680 So.2d 1327. Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Taylor v. Rowell, 98-2865 (La.5/18/99), 736 So.2d 812, Banks, supra; Barron v. Webb, 29,707 (La.App.2d Cir.8/20/97), 698 So.2d 727, unit denied, 97-2357 (La.11/26/97), 703 So.2d 651.

Validity of UM rejection Forms

The insurer bears the burden of proving that the insured rejected in writing UM coverage equal to bodily injury limits or selected lower limits |fiof coverage. New Hampshire Insurance Compa *781 ny v. Gowen, 29,842 (La.App.2d Cir.9/24/97) 699 So.2d 1169, writ denied, 97-2691 (La.1/9/98), 705 So.2d 1112. The mandatory nature of UM coverage is found in La. R.S. 22:1406, which embodies a strong public policy. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213. The object of UM coverage is to provide additional recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991); Daigle, supra.
Absent a rejection of UM coverage or a selection of lower limits, every insurance policy automatically includes UM coverage and no action is required for a person to acquire such UM coverage. La. R.S. 22:1406. The form used by the insurance company must give the applicant the opportunity to make a “meaningful selection” from his options provided by the statute: (1) UM coverage with limits equal to the policy’s bodily injury limits, (2) UM coverage with limits lower than the policy’s bodily injury limits or (3) no UM coverage. Tugwell v. State Farm, 609 So.2d 195 (La.1992). As stated, the first option requires no action. Henson, supra. The rejection or selection of lower limits must be done on a form provided by the insurer and signed by the named insured or a representative.[7] La. R.S. 22:1406 D(l)(a)(ii). The rejection must be “expressed clearly, unambiguously and unmistakably.” Henson, supra. No particular language or format, however, is sacrosanct; a rejection form will be upheld if it adequately advises the applicant of his options. Daigle, supra. Further, ]7although boxes or blanks are not required, if they are provided, they must not create an ambiguity in the usage of the form. See Tugwell, supra. We find that the above forms fail to satisfy this simple requirement.
In both the 1994-1995 and 1995-1996 UM rejection forms, the explanatory language implies that the insured must choose an option. There is, however, no option provided with which the insured can select limits equal to the bodily injury limits of the policy. There is no option to choose $2,000,000, which makes the forms ambiguous. See Tugwell, supra. In summary, neither of the UM rejection forms in question adequately inform the insured of what must be done on its part to obtain $2,000,000 in UMBI coverage.
Further, the language included in the rejection option of both UM rejection forms seems to state that Louisiana law requires rejection of UM coverage, which is also misleading. Specifically, the rejection option states:
IN ACCORDANCE WITH STATE REQUIREMENTS, THE UNDERSIGNED HEREBY REJECTS THE UNINSURED MOTORIST COVERAGE OTHERWISE REQUIRED TO BE AFFORDED IN THE AUTOMOBILE LIABILITY POLICY INDICATED ABOVE. (Emphasis ours).
This statement compounds the ambiguity already present in the forms.
Jacobs cites several cases within this circuit in which similar forms have been found to be adequate. See Rogers v. Caston, 31,809 (La.App.2d Cir.3/31/99), 732 So.2d 643; Home v. Horace Mann Insurance Company, 30,811 (La.App.2d Cir.8/19/98), 717 So.2d 273; Nesbitt v. Progressive Insurance Company, 29,660 (La. App.2d Cir.6/18/97), 697 So.2d 672. We find, however, that the trial court was correct in finding that the | «1994 — 1995 form did not adequately inform the insured of *782 its options; and we extend our finding to include the 1995-1996 form.
For instance, in Rogers, supra, the pertinent introductory language of the UM rejection form in question states:
.... requires us to provide you with Uninsured/Underinsured Motorists coverage with limits equal to the Bodily Injury limits of your policy unless you advise us, in writing, that you either reject the coverage or select limits higher or lower limits.... (Emphasis ours).
There is no statement in this form which instructs the insured to take any action regardless of the option chosen. In Home, supra, the introductory language states that each policy provides UM coverage by law, but that lower limits may be selected or it may be rejected. There is no language which directs the insured that he/she must do something on the form. Finally, in Nesbitt, supra, the introductory language of the UM rejection form states:
... limits of Bodily Injury Liability provided by the policy unless the insured shall reject such coverage or select a lower limit.
[ ] I hereby reject Uninsured Motorists Protection.
[ ] I hereby select Limits of Liability on Uninsured Motorists Coverage which are lower than the Bodily Injury Liability Limits on my policy.
Again, the insured is not led by this language to believe that an action must be taken regardless of the option chosen.
The IINA forms do not inform the insured that it would have the protection of UM coverage at the minimum liability coverage amounts if it did not reject the UM coverage, i.e., “you have UM coverage unless you reject it.” See also Washington v. Imperial Fire and Casualty Insurance Company, 28,434 (La.App.2d Cir.6/26/96), 677 So.2d 599. Specifically, the language in both forms, “Please sign and indicate in the space provided below the limits of coverage desired,” is misleading and creates an ambiguity in the forms. It leads the insured to believe that an affirmative action, which the statute specifically does not require, is required on that form.

CONCLUSION

For the foregoing reasons, the judgment of the trial court dismissing the motion for summary judgment filed by Defendant, Indemnity Insurance Company of North America is affirmed. All costs are assessed to Defendant, Indemnity Insurance Company of North America.
AFFIRMED.

. Mr. Moore's debts, including the liability arising from this accident, have been discharged in bankruptcy.

. We note that, in the introductory paragraph in her original petition, Ms. Leger erroneously stated she was appearing as administratrix of her children's estate.

. Mr. Thibodeaux was returning to the Jacobs' office in Baton Rouge from his assignment in Arkansas at the time of the collision. The referenced endorsement states:
The following is added to WHO IS INSURED:
Any employee of yours is an insured while using a covered auto you don't own, hire or borrow in your business or your personal affairs.

.The coverage provided by AISLIC was never reached because it was secondary to that coverage provided by IINA.

. The premium for the 1995-1996 policy was slightly higher than the premium for the 1994-1995 policy.

. We note that the UM rejection form erroneously states that the insured may select UMBI limits in excess of the policy bodily injury limits.

. Mr. Erickson's authority is not challenged.