735 So.2d 881 (1999)
Melvin SUTHERLAND
v.
Mylia BABIN, Reliance National Insurance Company, The Home Indemnity Company and State Farm Mutual Automobile Insurance Company.
No. 98-CA-923.
Court of Appeal of Louisiana, Fifth Circuit.
May 19, 1999.
*882 Thomas M. Richard, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, L.L.P., Mandeville, Louisiana, Attorneys for Defendant-Appellant The Home Indemnity Company.
Terry B. Loup Morris Bart, P.L.C., New Orleans, Louisiana, Attorneys for Plaintiff-Appellee Melvin Sutherland.
Court composed of Judges CHARLES GRISBAUM, Jr., MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is a lawsuit for personal injuries arising from a rear-end auto collision in which judgment was rendered against an uninsured/underinsured motorist (UM) insurance carrier in the amount of $300,000. The judgment was based on a jury's finding that the UM coverage rejection form did not, in and of itself, give the insured the option to select UM coverage equal to bodily injury limits. The trial court found the form was insufficient to reduce the statutorily-mandated coverage for the full amount of the bodily injury liability limits (in this case, $1,000,000) and rendered the judgment on stipulated damages.
We affirm, finding that the insured's selection of uninsured/underinsured motorist (UM) insurance coverage limits of less than the liability limits was invalid because it was made on a form that did not meet legal standards.
The plaintiff, Melvin Sutherland, was injured while riding as a passenger in a vehicle owned by his employer, DynMc-Dermott Petroleum Operations, Inc.. Among other defendants he sued his employer's automobile insurer, The Home Indemnity Company, under the UM provisions of the policy. Home provided DynMcDermott with auto liability coverage with bodily injury limits of $1,000,000. The policy included a UM rejection/selection form which indicated UM limits of $20,000 for bodily injury and $10,000 for property damage.
Home tendered $20,000 to plaintiff unconditionally, but plaintiff rejected the offer. He asserted that the UM selection/rejection form executed by DynMe-Dermott did not comply with the requirements for a valid written selection of lower UM coverage limits because it failed to give the insured the option of selecting a UM limit equal to the liability limit for bodily injury.
The plaintiff settled with and dismissed his claims against the tortfeasor and her insurer. The remaining parties stipulated to liability, causation and damages, so the only issue remaining for trial was whether DynMcDermott's UM limits were $20,000 or $1,000,000.
The case was tried to a jury, which rendered a verdict pursuant to interrogatories, in which they found Home had not proven that the UM rejection form gave the insured the option to select UM coverage equal to bodily injury limits. Based on the verdict, the court rendered judgment awarding plaintiff $300,000.[1] Home Insurance Company has appealed.
*883 The form used by Home reads as follows:
REJECTION OF UNINSURED MOTORISTS COVERAGE OR SELECTION OF LIMIT
OF LIABILITY LOUISIANA
 * * *
The Louisiana Insurance Code (Section R.S. 22:1406), amended, permits you, the insured named in the policy, to reject the Uninsured Motorists Coverage or to select a limit of liability higher or lower than the limit for Bodily Injury Coverage in the policy but not less than the basic financial responsibility limit. Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.
In accordance with the Louisiana Insurance Code (Section R.S. 22:1406), amended, the undersigned insured (and each of them)
(Applicable item marked [X])
[ ] agrees that the Uninsured Motorists Coverage afforded in the policy is hereby deleted.
[X] agrees that the following limit of liability applies with respect to the Uninsured
 Motorists Coverage afforded in the policy:
$ each person (enter limit if applicable);
$ 20,000 BI each accident.
 10,000 PD
Thus, the form provides a series of check-boxes and blanks in which the insured may either delete the UM coverage afforded in the policy or select a particular limit of UM coverage.
Edward Copeland of McGriff, Seibels & Williams, DynMcDermott's insurance broker, testified he addressed the UM options available to the company on two occasions, first in a formal presentation to the company management personnel and again in telephone discussions with Kirkland Jones, the company risk manager. He said the presentation included detailed discussions regarding each type of coverage, including UM coverage, although he could not recall the precise words used. Copeland is a broker based in Alabama and he did not advise DynMcDermott as to the requirements of Louisiana law.
Copeland testified the proposal to DynMcDermott offered a UM coverage limit of $20,000 for bodily injury and $10,000 for property damage. He said after the presentation DynMcDermott selected the $20,000/$10,000 UM limit. Further, he said, Jones telephoned him prior to executing the UM selection/rejection form. Copeland again discussed the various UM options available, including that if Jones did not sign the form the UM coverage would be the full policy limit.
Kirkland Jones corroborated Copeland's testimony. He confirmed that he specifically discussed UM coverage and limit waivers with Copeland on two occasions, one at a formal meeting and later, after he received the insurance forms, he asked Copeland what would happen if he *884 did not return the UM endorsement form. He said Copeland told him if the form was not returned the UM coverage limit would be $1,000,000. Jones stated the company decided to select lower limits because employees were already covered in most instances by worker's compensation.
Jones further testified he understood the full range of limits from zero up to a million dollars and he also discussed the substantial premium increase the company would incur if UM limits of $1,000,000 were selected. He did not think he had been misled or coerced at any time when he signed the form.
The jury's verdict form consisted of the following interrogatories:
 1. Do you find that the Home Indemnity Company
 proved by a preponderance of the evidence that
 the UM Form in and of itself gives DynMcDermott
 Petroleum, Inc. the Option to select UM
 coverage equal to bodily injury limits?
 YES ____ NO x 
 IF YOU ANSWERED "NO" TO QUESTION
 NO. 1 GO NO FURTHER. SIGN AND DATE
 THIS FORM.
 IF YOU ANSWERED "YES" TO QUESTION
 NO. 1, PLEASE ANSWER THE FOLLOWING
 QUESTION.
 2. Do you find that the Home Indemnity Company
 proved by a preponderance of the evidence that
 DynMcDermott Petroleum, Inc. made a meaningful
 and informed selection of UM coverage
 limits at the time the policy was issued?
 YES ____ NO ____
Because the jury responded "no" to the first interrogatory, they did not answer the second interrogatory.
On appeal Home makes the following assignments: (1) The Home UM selection/rejection form is valid as a matter of law and DynMcDermott made an informed selection of UM limits. (2) The trial court erred in denying Home's motion for directed verdict, because the issue of DynMc-Dermott's selection of lower UM limits should never have been decided by the jury. (3) The trial court erred in using Jury Interrogatory No. 1, which precluded the jury from considering extrinsic evidence and in failing to use Home's proposed jury interrogatory. (4) The trial court erred in failing to use Home's proposed jury interrogatories and jury instructions, because the instructions used did not allow the jury to consider applicable legal principles and render a correct judgment based on the facts and the law.
At the time of the accident here, the law on uninsured motorists coverage, La. R.S. 23:1406, stated as follows:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ... for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or under-insured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900....
(ii) After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, *885 irrespective of whether physically attached thereto.[2] [Emphasis added.]
Plaintiff contends the form is defective because it does not inform the insured that it can select UM limits in an amount equal to bodily injury limits, nor does it inform the insured that Louisiana law provides automatic UM coverage in the same amount as the bodily injury coverage unless modified by the insured. Nor does the form itself provide the insured with the option to select UM coverage with limits equal to the policy's bodily injury limits. Plaintiff asserts the form violates the requirements of La.R.S. 22:1406, as delineated in Tugwell v. State Farm Insurance Company, 609 So.2d 195 (La.1992).
In Tugwell the Supreme Court held that the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by La. R.S. 22:1406(D): UM coverage equal to bodily injury limits in the policy, UM coverage lower than bodily injury limits in the policy, or no UM coverage. 609 So.2d at 197. The court stated, "Implicit in the statute's requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option." 609 So.2d at 199.
On April 8, 1997 (the date of the trial in this case), the Louisiana Supreme Court rendered Daigle v. Authement, 96-1662 (La.4/8/97) 691 So.2d 1213, which clarified Tugwell. In Daigle, the Supreme Court stated that the form need not inform the insured of an unavailable option (for example, where an insured elects to purchase only the minimum bodily injury limits allowable, the option of selecting UM coverage at limits lower than those in the policy is foreclosed by law). 691 So.2d at 1215. The statute requires an affirmative act by the insured only if UM coverage is rejected altogether or, in an appropriate case, where lower UM limits are statutorily permitted and desired. 691 So.2d at 1216.
Tugwell held that a UM selection/rejection form does not meet statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. Daigle held that the UM law does not require a UM rejection/selection form be designed in any particular way nor that any particular language is sacrosanct. 691 So.2d at 1215. Rather, the form must be adequate for the purpose intended by the legislature, to fairly effectuate the intent of the law. Id.
Plaintiff argues that Daigle is distinguishable from the situation in this case, because in Daigle the liability portion of the policy had $20,000 bodily injury limits, the minimum allowed by law, and therefore the insured could not select lower limits. Here, however, the insured had three options: no UM coverage, UM coverage lower or higher than the bodily injury liability limits, or UM coverage equal to the bodily injury liability limits. Plaintiff contends the form is insufficient and fails to inform the insured of its options, because the form does not state that the insurer must provide coverage equal to the bodily injury limit unless the insured specifically decides otherwise. Plaintiff notes that Daigle reiterated the Tugwell standard that a form does not meet statutory requirements if it fails to inform the applicant of an available option or forecloses an available option.
It is the rejection of UM coverage, and not the acceptance, that must be the affirmative act of the insured. Henson v. Safeco Ins. Companies, 585 So.2d 534, 539 (La.1991).
Any affirmative signature or mark accepting coverage would be mere surplusage, since the coverage is automatically extended by operation of law. An applicant does not have to sign a separate document opting for coverage already *886 provided in the policy. Such a document could be thrown away after the insured's execution of it without any effect whatsoever. The statute requires an affirmative act only if UM coverage is rejected altogether or, in an appropriate case, where lower UM limits are statutorily permitted and desired.
Daigle, supra, at 1216.
"LSA-R.S. 22:14069(D)(1)(a) requires that a rejection of UM coverage be in writing. LSA-R.S. 22:1406(D)(1)(a) %65 does not require that an acceptance of UM coverage be in writing.... There is no need to do the vain and useless task of executing a written election for what is given by law. The only matter of legal consequence is the making of an informed decision. Any reasonable manner of execution of that informed decision should be acceptable as the statute mandates no other form than the rejection of UM coverage be in writing.... The intent of LSA-R.S. 22:1406(D)(1)(a) was to protect the insured from unwittingly being without UM coverage." [Emphasis in original.]
Gordon v. Southern United Fire Ins. Co., 95-2388 (La.App. 4 Cir. 8/21/96) 679 So.2d 582, 584, writ denied, 96-2326 (La.5/30/97) 694 So.2d 241.
Home contends the testimony of Copeland and Jones refutes the argument that the UM rejection form did not allow the insured to make a meaningful selection of UM coverage, because Jones is clearly a sophisticated consumer rather than an average layperson, he relied on an experienced broker, and the choice was a well-informed business decision.
Parol evidence may be used to establish the circumstances surrounding UM selection. See, e.g., White v. Shoalmire, 30,158 (La.App. 2 Cir. 1/21/98) 706 So.2d 588; Longo v. Bercegeay, 96-1129 (La. App. 3 Cir. 3/5/97) 692 So.2d 531; Anderson v. Allstate Ins. Co., 93 1102 (La. App. 1 Cir. 4/8/94) 642 So.2d 208; Hicks v. Somers, 577 So.2d 299 (La.App. 4 Cir. 1991), writ denied, 580 So.2d 671 (La.1991).
The insurer must place the insured in a position to make an informed rejection of UM coverage. Henson, supra. "To effect a valid exclusion, the form itself must be clear, unmistakable and unambiguous for an affirmative act to be informed and intelligently made." Holbrook v. Holliday, 93-1639 (La.App. 3 Cir. 6/1/94) 640 So.2d 804, 808, writ denied, 94-1735 (La.10/7/94) 644 So.2d 642.
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Roger v. Estate of Moulton, 513 So.2d 1126, 1131-1132 (La. 1987).
Here, the policy itself contains an endorsement called "Louisiana Uninsured Motorists CoverageBodily Injury," which states the limit of insurance will be the limit of uninsured motorists coverage shown in the declarations. The rejection/selection form states that the Louisiana Insurance Code permits the insured to reject the uninsured motorists coverage or to select a limit of liability higher or lower than the limit for bodily injury coverage in the policy, but not less than the basic financial responsibility limit. The form then sets out a check-box with which to reject the UM coverage and another check-box/fill-in-blank combination in which to select a limit of liability.
Nowhere in these documents, in either the endorsement or the rejection/selection form, is there a statement to inform the insured that failure to reject coverage or select lower limits will result in UM coverage equal to the bodily injury liability limits. We deem this form facially insufficient to comply with the requirements of the statute and the jurisprudence. Although, ironically, it is clear from the testimony that it was the intent of the insured to limit UM coverage to $20,000/$10,000, *887 that testimony cannot overcome the invalidity of the form.
"The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law." Savant v. American Co., 98 542 (La.App. 3 Cir. 12/9/98), 725 So.2d 43, 46; Absire v. Reliance Nat. Indem. Co., 97-1498 (La.App. 3 Cir. 4/15/98), 711 So.2d 413, writ denied, 98-1373 (La.7/2/98), 724 So.2d 735; Wilkinson v. Louisiana Indemnity-Patterson Ins., 96 0447 (La.App. 1 Cir. 11/8/96), 682 So.2d 1296, 1301, writ denied, 96-2920 (La.6/13/97), 695 So.2d 964; Jordan v. Honea, 407 So.2d 503, 506 (La.App. 1 Cir. 1981), writ denied, 409 So.2d 654, 409 So.2d 660 (La.1982).
Our conclusion is bolstered by the following statement of legislative intent in Acts 1987, No. 436, § 2:
The legislature expressly declares its intent that legally enforceable rejection of uninsured motorist coverage or selection of lower limits shall be made only on the standard form provided for in this Act. Other writings, letters, communications, or miscellaneous documents shall not be deemed evidence of the intent of any insured in this matter. [Emphasis added.]
With respect to defendant's remaining assignments, we find no reversible error. Assignment No. 2, concerning denial of the motion for directed verdict, is moot. As for Assignment No. 3, we agree that the trial court erred in using Jury Interrogatory No. 1, but not because it prevented the jury from considering the extrinsic evidence; rather, it was an erroneous statement of the law. The interrogatory asks the jury to determine whether "the UM Rejection Form in and of itself" gives the insured "the option to select UM coverage equal to bodily injury limits. [Emphasis added.]" As clarified in Daigle and cases cited therein, however, the statutory default is coverage equal to bodily injury liability limits and the insured need take no action to select it. Accordingly, a UM rejection form need not list that as a selectable option.
Nevertheless, it does not eliminate the requirement that the form contain sufficient information to enable an insured to make an informed decision. Where, as here, the form does not advise the insured of the consequences of failure to sign the form or to indicate rejection or selection of different limits, it must be considered insufficient.
In view of our conclusion, Assignment No. 4 merits little attention. Defendant argues the court committed reversible error in failing to use Defendant's Proposed Jury Instructions No. 4, 5, 6 and 9.[3] Although numbers 4 and 6 are correct statements of the law, the failure to give them is harmless error under the circumstances. The court did not err in refusing to give Numbers 5 and 9, however, because those matters can be considered only if it is *888 determined that the UM rejection form is valid on its face.
For the foregoing reasons, the judgment of the district court is affirmed. Pursuant to the stipulation of the parties, the parties are to pay their own costs.
AFFIRMED.
NOTES
[1] The parties also stipulated that if it were decided that Home provided UM limits of $20,000, a judgment would be entered in favor of plaintiff against his personal UM insurer, State Farm Automobile Insurance Company, in the amount of $100,000, without legal interest, each party to bear its own costs, and with no credits against the judgment for any payments previously tendered to plaintiff by any person or entity. If it were decided that Home provided UM limits of $1,000,000, a judgment would be entered in favor of plaintiff against Home in the amount of $300,000, without legal interest, each party to bear its own costs, and with no credits against the judgment for any payments previously tendered to plaintiff by any person or entity.
[2] We note that in 1997 the statute was amended to provide that the rejection or selection is to be made only on a form prescribed by the commissioner of insurance. La. R.S. 22:1406(D)(1)(a)(ii), as amended by Acts 1997, No. 1476, § 3, eff. Sept. 6, 1998.
[3] No. 4:

A UM selection form that does not require the insured to make an `X' or some other sort of pen stroke or other affirmative act in favor of UM coverage, is not considered to be invalid. Likewise, the form does not have to provide boxes, blanks or some means for the insured to choose UM coverage, in an amount equal to limits for Bodily Injury Coverage, since such coverage is automatically provided.
No. 5: "In determining whether an insurer validly selects lower limits of UM coverage, the only matter of legal consequence is the making of an informed decision."
No. 6: "The intent of the UM statute is to protect an insured from unwittingly being without UM coverage."
No. 9: "In deciding whether or not DynMc-Dermott made an informed choice, you may consider not only his knowledge, but the knowledge of its broker, Eddie Copeland. DynMcDermott, as a principal, is legally charged with constructive knowledge of facts pertinent to transactions by its broker which the broker knew or could have ascertained by reasonable diligence."