**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-30683
_____

CALVIN J. HOTARD, JR.; ET AL,

                                                      Plaintiffs,

STATE FARM FIRE AND CASUALTY COMPANY,

                                              Plaintiff-Appellant,

                              versus

STATE FARM FIRE AND CASUALTY COMPANY; ET AL,

                                                      Defendants,

TRAVELERS INDEMNITY COMPANY,

                                           Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

April 4, 2002

Before JONES, WIENER, and PARKER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant State Farm Fire and Casualty Company ("State Farm"), proceeding pursuant to an assignment of claims from one Calvin Hotard, appeals the district court's summary dismissal of defendant-appellee Travelers Indemnity Company ("Travelers") from the case, contending that the Uninsured/Underinsured Motorist ("UM") coverage waivers in the Travelers insurance policy are

invalid.  Agreeing with the district court's conclusion that the Travelers UM coverage waivers are valid, we affirm.

## I.

### FACTS AND PROCEEDINGS

Calvin Hotard sustained injuries in a motor vehicle accident. He sued the driver of the other vehicle, who admitted total fault for the accident.  Hotard was paid the policy limit of $10,000 by the tortfeasor's insurer, as well as his own vehicle liability insurance policy's UM limit of $100,000 by his insurer, State Farm. In addition to his basic motor vehicle liability policy, Hotard had $1,000,000 in UM coverage under his umbrella policy that also was issued by State Farm.

The car that Hotard was driving at the time of the accident was not his own, but was one owned by his employer, Jefferson Parish (the "Parish").  The Parish maintained a policy issued by Travelers that provided both commercial automobile insurance and excess automobile liability indemnity which, in combination, covered the vehicle driven by Hotard for up to $4,500,000.[1]  The Parish had purported to reject UM coverage for its vehicles by marking a box on each of two UM coverage waiver forms, which were

---

[1]     By post-argument submissions, the parties jointly represented that there is only one Travelers policy at issue.  That policy encompasses two different coverages, one for basic commercial automobile liability and the other for excess automobile liability.  The UM waiver for excess coverage was executed on April 22, 1998; the UM waiver for basic coverage was executed on May 1, 1998.

2

integral parts of Travelers policy, one form for the basic coverage and the other form for the excess coverage. The validity of the Parish's rejection of UM coverage is the central issue of this case, and it turns on the legal sufficiency of the UM waiver forms provided to the Parish by Travelers and used by the Parish in its effort to reject UM coverage.

Hotard filed a claim for damages against his insurer, State Farm, in Louisiana state court after State Farm denied UM coverage under its Umbrella policy. State Farm removed the case to district court based on diversity of citizenship. In its answer to Hotard's complaint, State Farm asserted an affirmative defense that the Parish's waivers of UM coverage under the Travelers policy were invalid. Therefore, argued State Farm, Travelers was obligated to provide UM coverage and, as the insurer of the <u>vehicle</u> in question, Travelers had primary responsibility to pay UM coverage to Hotard.

In response, Hotard amended his complaint to add Travelers as a defendant. He then moved for summary judgment against State Farm, seeking a declaration that the UM waivers in the Travelers policy were valid, leaving State Farm as the insurer with UM coverage responsibility to him. The district court granted Hotard's motion, ruling that the Parish's UM rejections in the Travelers policy were valid and that State Farm was responsible for Hotard's UM claim.

A few months later, in November 2000, Travelers filed a summary judgment motion seeking a declaration that, because there

3

were no longer any fact issues relating to it, Travelers should be dismissed from the case. The district court granted that motion, dismissing with prejudice all of Hotard's claims against Travelers. It then moved for entry of judgment pursuant to Rule 54(b), asking the district court to certify as final its summary judgment of dismissal, but the district court denied this motion.

The trial of Hotard's suit against State Farm was scheduled to commence at the end of January 2001, but the parties settled before trial, and the settlement was approved by the district court. Pursuant to the settlement, Hotard assigned to State Farm any rights that he might have to proceed against Travelers on the issue of UM coverage. In May 2001, State Farm filed a motion to have all the orders entered by the district court relating to the issue of Travelers's UM coverage certified as final judgments under Rule 54(b) or, in the alternative, under 28 U.S.C. § 1292(b), to permit an immediate appeal of those orders. The district court granted State Farm's motion and certified the orders as final judgments under Rule 54(b). Having thus decided, the court declined to address State Farm's alternative § 1292(b) motion. The next day, State Farm filed its notice of appeal.

## II.

## ANALYSIS

### A. Standard of Review

4

Although a district court may not deem as final that which is not final, certifications of judgments as final pursuant to Rule 54(b) are generally reviewed for abuse of discretion.[2] The underlying motions regarding Travelers's UM coverage and the dismissal of Travelers from the case were summary judgment motions, which we review <u>de novo</u>.[3] A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[4] An issue is material if its resolution could affect the outcome of the action.[5] In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party.[6]

The standard for summary judgment mirrors that for judgment as a matter of law.[7] Thus, we must review all of the evidence in the record but make no credibility determinations or weigh any

---

[2] <u>See</u> <u>Curtiss-Wright Corp. v. General Elec. Co.</u>, 446 U.S. 1 (1980); <u>Sears, Roebuck & Co. v. Mackey</u>, 351 U.S. 427 (1956).

[3] Fed. R. Civ. P. 56.

[4] Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[5] <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

[6] <u>See</u> <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 525 (5th Cir. 1999).

[7] <u>Celotex Corp.</u>, 477 U.S. at 323.

5

evidence.[8]  In reviewing the evidence, we must disregard everything favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[9]

The issue underlying the summary judgment in this case is the correctness of the district court's application of Louisiana insurance law to the determine the validity of Traveler's UM coverage waiver forms.  This presents a question of law, which we review de novo, employing the principles of Louisiana insurance contract construction.[10]

## B.  Timeliness of State Farm's Appeal

As a threshold matter, Travelers contends that State Farm's notice of appeal, filed on May 22, 2001, violates the 30-day time limit set by Fed. R. App. P. 4(a)(1)(A).[11]  Travelers notes that it was dismissed as a party in November, leaving Hotard and State Farm as the only remaining parties to the litigation.  When State Farm

---

[8]Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

[9]Id. at 151.

[10]  Adams v. Unione Mediterranea Di Sicurta, 220 F.3d 659, 676 (5th Cir. 2000).

[11]  Fed. R. App. P. 4(a)(1)(A) ("In a civil case ... the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.").

and Hotard entered into a settlement agreement in January 2001, all issues of liability between the relevant parties were resolved. Consequently, reasons Travelers, the 30-day time period expired well before May, when State Farm's first and only Notice of Appeal was filed.

State Farm counters by noting that the orders herein appealed were not deemed final until May 21, only one day before State Farm filed this appeal, when the district court certified them as such under Rule 54(b). State Farm argues that the settlement agreement between it and Hotard did not render past judgments from the district court final retroactively. We agree with State Farm: As the final —— and therefore appealable —— judgment in this case was not entered until May 21, 2001, State Farm's notice of appeal was timely filed.

## C. <u>Hotard's Assignment of Rights to State Farm</u>

Travelers contends that State Farm cannot maintain this litigation against Travelers because State Farm's only basis for proceeding against Travelers is Hotard's assignment of claims to State Farm. Even though Hotard was the party who had added Travelers as a defendant, he argued on numerous occasions that the Parish's UM waivers were valid as to Travelers, so that State Farm was the party solely liable for his damages. Relying on the fact that Hotard advanced this position throughout the litigation, Travelers asserts that, as Hotard's subrogee, State Farm cannot now

7

advance an argument wholly inconsistent with its subrogor's prior consistent position in the litigation, namely, that Travelers's UM waivers —— which Hotard repeatedly insisted were valid —— are invalid. In other words, Travelers contends that Hotard's subrogation cannot place State Farm in a better position than was Hotard at the moment of the subrogation; and had subrogation not occurred, Hotard could not have argued that Travelers's UM waivers were invalid, a direct contradiction of his previous position.

In response, State Farm argues that it is entitled to appeal the dismissal of Travelers even if so doing advances a position inconsistent with Hotard's prior arguments. State Farm offers two supporting reasons: (1) Hotard is the one who impleaded Travelers as a defendant; and (2) Hotard filed a motion opposing the dismissal of Travelers from the case.[12]

Travelers's position in this regard, although not articulated in its brief as such, rings of res judicata or judicial estoppel.

---

[12] Hotard's Memorandum in Opposition to Travelers's Motion for Summary Judgment, however, appears to be a cursory and obligatory filing. In this two-page Memorandum, Hotard supports the district court's conclusion that Travelers's UM waiver was valid, but in a single sentence maintains that he opposes the dismissal of Travelers from the action:

> This court, <u>plaintiff believes correctly</u>, found that the waiver form used by Traveler's [sic] made all statutory options available to its insured, specifically the option to choose a lower amount of uninsured motorist coverage. Thus, this Court found Traveler's not to have primary coverage. <u>Nevertheless, plaintiff opposes the dismissal of Traveler's by way of the instant motion</u>. (emphasis added).

Under general principles of judicial estoppel, a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument. The doctrine of judicial estoppel is recognized by both Louisiana state law[13] and federal law.[14]

Under the circumstances presented here, however, we decline to address whether State Farm's arguments on appeal are barred by the doctrine of judicial estoppel. As we explain in detail below, the applicability of judicial estoppel vel non is immaterial in this case because, even when we assume arguendo that State Farm's claims are not barred, we conclude that the Travelers UM forms executed by the Parish are valid as a matter of law. Therefore, when the Parish executed those forms, it effectuated valid waivers of Travelers's UM coverage.

---

[13] See, e.g., Showboat Star Partnership v. Slaughter, 789 So.2d 554, 561 (La. 2001):

> Judicial estoppel has been defined as "the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." (citations omitted).

[14] See, e.g., In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999) ("Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'") (citations omitted).

**D.** **The Validity of Travelers's UM waiver**

The Parish, when purchasing automobile insurance from Travelers, purported to reject UM coverage by marking the box next to the relevant clause on each of the waiver forms. State Farm nevertheless contends that the forms provided by Travelers and executed by the Parish are fatally defective as a matter of Louisiana law, making absolutely null any use of those forms as purported waivers. State Farm relies on § 22:1406(D) of the Louisiana Revised Statutes, to insist that Travelers, as the UM insurer of the vehicle involved in the accident, is liable to Hotard.[15]

As an initial matter, we note that at issue here is a single Travelers policy with both basic and excess or umbrella motor vehicle coverage. Although not clearly explained in the briefs or at oral argument, counsel have subsequently clarified that the policy provides two kinds of coverage and contains two somewhat different UM waiver forms, one for basic commercial automobile

---

[15] La. Rev. Stat. 22:1406(D)(1)(c)(ii) provides in relevant part:
> (ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following <u>priorities</u> of recovery under uninsured motorist coverage shall apply:
>> (aa) The uninsured motorist coverage <u>on the vehicle in which the injured party was an occupant</u> is primary.
>
> (emphasis added).

10

coverage and the other for excess coverage. That the Parish intended to waive UM coverage entirely by executing both forms is indisputable. Like the district court, we discern the language in the <u>basic</u> UM coverage waiver form to be less problematic to Travelers under State Farm's attack than is the <u>excess</u> UM waiver coverage form. For that reason, we address only the form more vulnerable to State Farm's argument —— namely, the waiver of excess UM coverage.[16]

Louisiana statutes and jurisprudence evince a strong public policy in favor of UM coverage.[17] The Supreme Court of Louisiana instructs that § 22:1406(D), the statute embodying this public policy, is to be liberally construed and that UM coverage will be read into an insurance policy unless validly rejected.[18] The court directs that any waivers, rejections, or exclusions from UM

---

[16] This does not mean that we have not read and analyzed the other, basic UM coverage form; we have. Having carefully examined that form, we are convinced that it clearly meets the requirements of Louisiana insurance law as it stood at the time the waiver was executed, and thus hold it valid as well. In addition, we reject as meritless State Farm's contention that the presence of two separate UM coverage waiver forms creates an ambiguity in the terms of the policy, requiring invalidation.

[17] <u>Roger v. Estate of Moulton</u>, 513 So.2d 1126, 1130 (La. 1987) ("In Louisiana, UM coverage is provided for by statute and embodies a strong public policy.").

[18] <u>Id.</u> (commenting on La. Rev. Stat. 22:1406(D))

coverage must be "clear and unmistakable."[19]  As stated by that court in <u>Tugwell v. State Farm Ins. Co.</u>, the form used by the insurance company must give the applicant "the opportunity to make a 'meaningful selection' from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage."[20]  The insurer — in this case, Travelers — bears the burden of proof that either a valid rejection of UM coverage or a valid selection of coverage with lower limits has been legally perfected.[21]

Well after the accident underlying this case had occurred, the Louisiana legislature revised the applicable law to provide for a simple, uniform UM election form.  Thus the legal issue at the heart of this case is obsolescent to say the least.[22]  For the time frame of this case, however, neither the then-appealable statute nor the Louisiana Supreme Court had mandated a specific manner or particular form that the insurer had to employ to afford the

---

[19]  <u>Id.</u>

[20]  609 So.2d 195, 197 (La. 1993).

[21]  <u>Daigle v. Authement</u>, 691 So.2d 1213, 1214 (La. 1997).

[22]  La. Rev. Stat. Ann. 22:1406(D)(1)(a)(ii) (West 2001) ("Any form executed prior to September 6, 1998 shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection.").

12

insured a meaningful opportunity to select one of the three UM options.[23]  On the contrary, in response to an insured's argument that the statute required that the form provide affirmative means (by blanks or boxes) to choose any one of the three statutory options, the Daigle court stated, "[w]hile such a format [three boxes requiring an affirmative choice of one] may be desirable, it is only one way of making sure the applicant is informed of the available options and allowed to choose between them."[24]  Still, forms have been declared invalid —— resulting in default UM coverage in the  full amount of the bodily injury liability coverage despite the obvious intention of the parties to the contrary —— when the forms were deemed to foreclose an option available to the insured or failed to make clear in writing that

---

[23]  Id. at 1215 (recognizing that the statute does not require "sacrosanct" language or a particular design and that many different variations of the UM coverage form may be used as long as the forms adequately effectuate the intention of the law).

[24]  Id. at 1216; cf. Anderson v. Allstate Ins. Co., 642 So.2d 208, 211 and attached photocopy in opinion (La. App. 1994):
> We find that under the facts of this case, the form used provided the required three options for the insured. [The insured] could simply sign the form, thus triggering automatic uninsured coverage in the amount of the bodily injury liability coverage; or check the first box, selecting uninsured motorist coverage with lower limits, filling in the blanks for the desired amount; or check the second box, rejecting uninsured motorist coverage completely.  (emphasis added).

all three options existed.[25]

The Travelers excess UM coverage waiver form on which the Parish indisputably intended to waive UM coverage reads in relevant part:

In accordance with Louisiana Statutes, <u>Uninsured Motorists Insurance</u> which provides coverage for damages to bodily injury which the insured may be entitled to recover from the owner or operator of an uninsured motor vehicle, <u>must be provided</u> on your Excess or Umbrella policy <u>at limits equal to such policy's bodily injury liability limits</u>. <u>You do have the option to reject this coverage or select limits which are lower than the Bodily injury limits on such policy</u>.

Please indicate your desired options by checking the appropriate box and signing the form below:

~ 1.Uninsured Motorists coverage at limits other than the Bodily Injury Liability limits of my Excess or Umbrella policy: $ _____ each accident; or $ _____ each person, $ _____ each accident.

~ 2. I hereby reject Uninsured Motorists Bodily Injury coverage on my Excess or

---

[25] <u>See</u> <u>Tugwell</u>, 609 So.2d at 198 (form invalid because it did not afford the insured the option of selecting UM coverage with limits below liability amount); <u>Roger</u>, 513 So.2d at 1131-32 (finding that a letter from the insured to the insurer rejecting UM coverage was insufficient, stating "to effect a valid rejection of UM coverage ... [the insured] must expressly set forth in a single document that UM coverage is rejected ... as of a specific date in a particular policy .... A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection."); <u>Sutherland v. Babin</u>, 735 So.2d 881, 886 (La. App. 1999) ("Nowhere in [the policy]... is there a statement to inform the insured that failure to reject coverage equal to the bodily limits will result in UM coverage equal to the bodily injury liability limits. We deem this form facially insufficient to comply with the requirements of the statute and jurisprudence.").

14

Umbrella policy.[26]

The Parish marked the box immediately to the left of choice 2. The district court, relying largely on the Louisiana Supreme Court's language in Tugwell and Daigle, found that the form adequately informed the Parish of all three of its options. We agree.

Tugwell teaches that the UM waiver form must be set up in such a way "that it is apparent to the reasonable person" that all the statutory options are available.[27] This was clarified in Daigle:

> [T]he statute does not require an affirmative act to choose coverage [up to the liability limit].... The statute requires an affirmative act only if UM coverage is rejected altogether or ... where lower limits are statutorily permitted and desired. Accordingly, we cannot conclude that [the insurer's] failure to set up its form so as to require a penstroke in favor of coverage renders the form defective.[28]

Here, the Travelers policy ineluctably allows the insured to select UM coverage at limits equal to the policy's bodily injury limits — by doing nothing — or to select limits lower than those in the policy or to reject UM coverage altogether — by checking the applicable box.

State Farm nevertheless insists that the form is defective because it fails adequately to provide for the insured

---

[26]    Travelers Excess or Umbrella Policy UM Coverage Form, (emphasis added).

[27]    Tugwell, 609 So.2d at 199 (emphasis added).

[28]    Daigle, 691 So.2d at 1216.

15

affirmatively to chose —— presumably by checking a third box —— coverage equal to the full policy limit for bodily injury liability. State Farm would have us adopt the proposition that the statement in the Travelers UM form to the effect that the carrier is bound to provide UM coverage equal to the policy limits, coupled with the obvious implication that checking no box constitutes an election to accept such full UM coverage, is not sufficient.

We decline State Farm's invitation. Both <u>Daigle</u> and a Louisiana Court of Appeal case, <u>Anderson</u>, unequivocally state that because the option of coverage in the full amount of the policy's bodily injury liability limit is the statutory default, that option need not be affirmatively selected.[29]

The foundational inquiry here is whether a reasonable person would understand, from reading the Travelers policy, that doing nothing —— marking neither the box for option 1 nor the box for option 2 —— constitutes his election to receive full or maximum UM coverage. We are convinced beyond peradventure that the answer to that core question is an unequivocal and unconditional "yes." The emphasized portions of the above-quoted paragraph from the UM waiver form here at issue more than adequately inform the average reasonable person that he or she will be covered to the maximum <u>unless</u> some other option —— lesser coverage or no coverage —— is

---

[29] <u>Id.</u>; <u>Anderson</u>, 642 So.2d at 211.

16

affirmatively exercised by checking one of the boxes. That language in the Travelers form distinguishes it from those policy provisions that were held invalid in the cases relied on by State Farm.[30] We hold that the UM coverage waiver forms furnished to the Parish by Travelers were not deficient or invalid, and that the Parish's waiver of UM coverage was therefore valid, justifying the district court's dismissal of Travelers from this case.

## III.

## CONCLUSION

For the foregoing reasons, the district court's dismissal of Travelers is

AFFIRMED.

---

[30] See, e.g., Sutherland, 735 So.2d 881 (UM waiver form held invalid because the form explained the statutory requirement, but did not indicate that non-selection of the other two options would result in the default of full UM coverage).