# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 05-310

**JEFFREY ALTON BARRETT, ET AL.**

**VERSUS**

**PROGRESSIVE SECURITY INSURANCE CO., ET AL.**

**Consolidated with**
**CA 05-311**

**PROGRESSIVE SECURITY INSURANCE CO., ET AL.**

**VERSUS**

**JEFFREY ALTON BARRETT, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 211,858 CONSOLIDATED WITH 211,970
HONORABLE F. RAE  SWENT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Philip Gardiner Hunter**
**Hunter & Morton**
**P. O. Box 11710**
**Alexandria, LA 71315-1710**
**(318) 487-1997**
**Counsel for Plaintiffs/Appellees:**
**Jeffrey Alton Barrett**
**Michael Glenn Barrett**
**Pamela Barrett Nordrum**
**Kathryn Barrett Colson**

**Ian Alexander Macdonald**
**Perret, Doise**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendant/Appellant:**
**Progressive Security Insurance Co.**

**SAUNDERS, Judge.**

Stephen Barrett was killed in an automobile accident by an underinsured driver. His heirs filed suit, and the trial judge granted partial summary judgment in their favor ruling that Mr. Barrett had $500,000.00 of UM coverage because no UM selection form requesting a lower amount of coverage was ever executed. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In January of 2002, Stephen Barrett obtained automobile insurance coverage in the amount of $500,000.00 (combined single limit) from Progressive Security Insurance Company (hereinafter referred to as "Progressive") through the Crick Insurance Agency (hereinafter referred to as "Crick"). The policy period began on January 14, 2002. Mr. Barrett properly executed a written form rejecting UM coverage. Subsequently, on January 21, 2002, Mr. Barrett contacted Crick and asked that $500,000.00 in UM coverage be added to the policy. The requisite paperwork for this change in coverage, including an Uninsured/Underinsured Motorist Bodily Injury ("UMBI") Coverage form stating, in pertinent part, that this election:

> shall apply . . . to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.

was prepared for Mr. Barrett's signature. He signed the documents on January 22, 2002.

Then, on March 13, 2002, a person identifying herself as Georgia called Crick and requested that the policy address for Mr. Barrett be changed to a post office box. Crick changed the address in accordance with this request. On April 5, 2002, a person identifying himself as Mr. Barrett called Crick requesting elimination of the UM coverage and a reduction in the bodily injury liability limits of the policy from $500,000.00 to $10,000.00 per person and $20,000.00 per accident. The caller was

informed that the waiver of UM coverage required a written waiver but that the reduction in liability limits could be implemented immediately. A modified policy reflecting the lower liability limits and reduction of UM coverage to the new liability limits pending execution of the written waiver of UM coverage was mailed to the new policy address requested by Georgia. The UM waiver form was also sent to that same address but was never returned to Crick.

Mr. Barrett was subsequently killed in an automobile accident caused by a drunk, underinsured driver. The accident occurred on June 15, 2002. Mr. Barrett's heirs then filed suit for damages against, among others, Progressive. Both parties filed motions for partial summary judgment on the amount of UM coverage with Plaintiffs arguing that there was $500,000.00 in coverage and Progressive arguing that only $10,000.00 of coverage was provided. These motions were heard on March 15, 2004, and the trial judge ruled in favor of Plaintiffs. Progressive appealed that ruling. We affirm.

**ASSIGNMENT OF ERROR**

The trial court erred as a matter of law in concluding that Progressive's policy provides Mr. Barrett's heirs with UM limits of $500,000.00.

**STANDARD OF REVIEW**

Appellate courts conduct a *de novo* review of rulings on motions for summary judgment. "It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Alfred Palma, Inc., v. Crane Servs. Inc.,* 03-0614, p. 3 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774; La.Code Civ.P. art. 966(B).

2

## LAW AND ANALYSIS

Our analysis must begin with La.R.S. 22:680, which provides, in pertinent part:

(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900 unless economic-only coverage is selected as authorized herein. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative

which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. **An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance.** Any changes to an existing policy, regardless of whether these changes create new coverage, **except changes in the limits of liability,** do not create a new policy and **do not require the completion of new uninsured motorist selection forms**.

[Emphasis added]. Based upon the clear wording of this statute, we can resolve this issue without examining whether Crick's mailing of the new policy to the address provided by Georgia satisfied La.R.S. 22:628, requiring that modifications be sent to the "last known address as shown on such policy or evidence of insurance or is personally delivered to such holder." Because the new policy was not mailed to the address shown on the original policy or personally delivered to Mr. Barrett, it could be argued that the new policy was not binding whatsoever. The trial judge, however, granted summary judgment without ruling on that issue and we affirm on the same basis.

Progressive argues that no new selection form was required because the UM coverage was merely lowered to the statutory minimum. Progressive's position is that

reversion to the statutory minimum amount of UM coverage supercedes the statutory requirement for a new selection form. For the reasons discussed below, this argument lacks merit.

The statute quoted above states that a new uninsured motorist selection form is not required when a policy's liability limits are not changed. In the case *sub judice*, the policy's liability limits were changed. Accordingly, a new uninsured motorist selection form was required; however, no new form was ever completed. Mr. Barrett properly waived UM coverage when he initially obtained coverage. He also properly changed his initial choice by completing a new selection form choosing $500,000.00 in UM coverage. Subsequently, the liability limits of the policy were changed. This change triggered the exception in La.R.S. 22:680 requiring completion of a new uninsured motorist selection form before any change in UM coverage from the previous selection could become effective. No such form was ever completed; therefore, the previous selection form remained in effect. Pursuant to that form, Mr. Barrett had $500,000.00 in UM coverage. The trial judge granted partial summary judgment to this effect. We affirm.

**CONCLUSION**

The trial judge's grant of partial summary judgment is affirmed. Costs of this appeal are assessed against Defendant.

**AFFIRMED.**