STEWART, J.
hThe question presented in this appeal concerns the validity of uninsured/underin-sured motorist (UM) rejection forms. Plaintiffs, William and Carolyn Littleton, have appealed from, the trial court’s judgment denying their motion for partial summary judgment on the issue of insurance coverage, and granting the motion for summary judgment filed by defendant, Travelers Indemnity Company. For the reasons more fully expressed herein, we affirm the trial court.
FACTS
On April 6, 2002, while driving a truck owned by his employer, Vaughan & Bush, Inc., William Littleton was involved in an accident with a vehicle driven by Dwayne G. Enterkin. Littleton allegedly incurred permanent physical injury.[1]
Enterkin had a policy of liability insurance with limits of $25,000 with State Farm Mutual. In 2001, at the time of the accident, Vaughan & Bush was insured by a primary policy of commercial automobile liability insurance with a liability limit of $1,000,000 issued by Travelers Indemnity *743 Company of Connecticut (“Travelers CT”), and an umbrella policy issued by Travelers Indemnity Company of Illinois (“Travelers IL”) for $2,000,000. In the policy period for 1999 to 2000, Vaughan & Bush was insured by Travelers IL with a liability limit of $5,000,000; thus the liability limit for the Traveler’s IL umbrella had been reduced for the policy period | operating during the time of the accident. Littleton had automobile insurance with State Farm with uninsured motorist (“UM”) limits of $50,000.
On March 5, 2003, Littleton filed a petition for damages naming as defendants Enterkin, State Farm in its capacity both as Enterkin’s liability carrier and as Little-ton’s UM carrier, Travelers CT, and Travelers IL in their capacity as UM insurers of Littleton’s employer, Vaughan & Bush.
Travelers CT and Travelers IL produced UM rejection forms signed by Don Bush, who was president of Vaughan & Bush. On May 19, 2004, Littleton filed a motion for partial summary judgment on the issue of insurance coverage by Travelers CT and Travelers IL and insurance ranking, arguing that the UM rejection forms were invalid. On October 19, 2004, Travelers CT and Travelers IL filed a cross motion for summary judgment. On July 22, 2006, the trial court denied Little-ton’s motion for partial summary judgment, and granted both Travelers’ motion for summary judgment.
Littleton timely appealed.
DISCUSSION
Our supreme court set forth the applicable law in Duncan v. U.S.A.A. 06-363, (La.11/29/06), 950 So.2d 544, as follows:
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). A motion for summary | ¡judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. In ruling on the present cross motions for summary judgment, we will determine whether either party has established there are no genuine issues of material fact and it is entitled to judgment as a matter of law.
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Roger, 513 So.2d at 1130; A.I. U. Ins. Co. v. Roberts, 404 So.2d 948, 949 (La.1981). The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La.1991); Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982).
UM coverage is determined not only by contractual provisions, but also by applicable statutes. Roger, 513 So.2d at 1130. Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. *744 Daigle v. Authement, 96-1662, p. 3 (La.04/08/97), 691 So.2d 1213, 1214; Henson, 585 So.2d at 537.
This court has held the statute is to be liberally construed. Daigle, 96-1662 at p. 3, 691 So.2d at 1214; Roger, 513 So.2d at 1130. The liberal construction given the UM statute requires the statutory exceptions to coverage be interpreted strictly. Roger, 513 So.2d at 1130. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Daigle, 96-1662 at p. 3, 691 So.2d at 1214; Roger, 513 So.2d at 1130. In accordance with this strict construction requirement, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Tugwell, 609 So.2d at 197.
As stated by this court in Roger, 518 So.2d at 1130:
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(l)(a), the insured or his authorized | representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. (Citations omitted.)
La. R.S. 1406(D)(l)(a)(ii) provides:[2]
An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. (Emphasis added).

Travelers IL Policy

Bush signed the UM rejection form for the Travelers IL umbrella liability policy on September 23, 1999. The policy was for the years 1999 and 2000 and provided Vaughan & Bush with $5 million bodily injury liability limits, but the policy for the period starting on August 27, 2001, and ending on August 27, 2002, provided Vaughan & Bush with limits of $2 million for bodily injury liability, a $3 million decrease. According to Littleton, this is a change in the limits of the policies, and therefore the 1999 UM rejection form does not apply to the Travelers IL umbrella for 2001 policy. However, we disagree with this proposition.
The appellants cite Barrett v. Progressive Security Insurance Co., 05-310 (La.App. 3d Cir.11/02/05), 915 So.2d 1023, as authority for the idea that it was necessary for Vaughan & Bush to sign a form rejecting $2|5million in excess UM coverage. In Barrett the court held that the change of the liability limits triggered the exception set forth in La. R.S. 22:680, thus a new UM rejection form needed to be executed. However, Travelers IL distinguishes the *745 present case from Barrett, supra, by noting that, in Barrett, the insured increased his coverage limits, and eliminated his UM coverage whereas in the present case the insureds simply decreased their liability coverage limits. Travelers IL reasons that an increase in policy limits requires another UM selection because the insured should be made aware that even an increase in policy limits does not necessarily grant the insured UM coverage, and thus the insured would be allowed the opportunity to knowingly accept or reject UM coverage Moreover, Vaughan & Bush never had UM coverage. Another UM rejection form would have been pointless. Vaughan & Bush did not need to decline coverage it never had. The trial court was correct to grant summary judgment in favor of Travelers IL. Thus, this assignment has no merit.

Travelers CT Policy

There is no evidence, and indeed plaintiffs have not argued, that the liability limits provided by the Travelers CT policy had been altered; therefore the UM rejection form for the Travelers CT policy is valid, and the trial court’s granting of the Travelers CT’s motion for summary judgment was proper.[3]
| .CONCLUSION
For the reasons stated above, affirm the trial court’s judgment granting summary judgment in favor of Travelers Indemnity Company of Connecticut and Travelers Indemnity Company of Illinois. Costs of this appeal are to be borne by appellants.
AFFIRMED.
BROWN, C.J., Dissents with written reasons.

. Carolyn Littleton has asserted a claim for loss of consortium.

. La. R.S. 1406(D)(l)(a)(ii) was changed to La. R.S. 22:680 in 2003, after the accident at issue.

. Plaintiffs also argue that the UM forms are invalid or inapplicable because Bush did not have the authority to sign the rejection form for Vaughan & Bush. They claim that Bush signed the rejection as an individual, not as a representative of Vaughan & Bush. They also claim the addition of new insured companies to be covered by the policies constitutes a new policy requiring a new UM rejection form. These arguments are clearly without merit. Don Bush was the president of Vaughan & Bush at the time he signed the forms, and there is no evidence that Bush obtained this coverage for his own person. Further, each UM selection/rejection form in question is tied to a specific policy by a policy number which identifies the precise policy at issue and thus the issuing Travelers’ company. No evidence has been submitted to this court to suggest that new people or companies had been added to these policies.